MISSOURI, KANSAS-& TEXAS RAILWAY COM-
PANY v. AMERICAN SURETY COMPANY OF
NEW YORK, Appellant.

In Banc, December 30, 1921.

1. APPELLATE PRACTICE: Law Case: Review of Evidence. On ap-
peal from a judgment in an action at law, such as a suit to recover
the amount of an indemnifying bond, tried by the court sitting as
a jury, the province of the appellate court in reviewing the evi-
dence extends no further than to ascertain if the judgment is sup-
ported by any substantial evidence; and when this has been de-
termined, the findings of pertinent facts by the trial court are as
conclusive as if their verity had been formally conceded.

2. SURETY COMPANY: Liability: Construction of Bond: Usual Rule.
The general rule that sureties are the favorites of the law and
that contracts made by them should be construed most strongly in
their favor has no application to a corporation organized and em-
powered to act as surety for a price; but its operations being pure-
ly commercial and exercised solely for profit, its obligations are
akin to those of an insurance company, and are to be construed
like other contracts, that is, in accordance with the reasonable in-
tent of the parties as indicated by the terms of the bond, and all
ambiguities therein are to be resolved against such corporate sure-
ty.

3. ———: ———: Sale of Railroad Ties: Guaranteed Ownership: Pay-
ment to Another Claimant. Where tie contractors, under contract
with a railroad company to furnish it ties at a specified price, to be
bought in the open market and delivered upon the right of way,
gave bond, with defendant corporation as surety, to indemnify the
railway company against all loss and damage against any claim
which might be made against the company on account of any ties
furnished by the principal and accepted by the railroad company,
and to warrant and defend the title thereto, and after a large
amount of ties had been delivered, accepted and paid for, a timber
company, claiming to have sold to said contractors and the railroad
company as joint contractors a part of the ties included in those
deliveries and that it had not been paid for them, brought suit
against the railroad company and recovered judgment for the
value of the ties so sold, by which it was adjudged that the con-
tract, being both joint and several, either defendant was liable

Mo., Kan. & Tex. Ry. Co. v. American Surety Co.

for the whole debt, the said railroad company is entitled to re-
cover on said bond on account of the judgment so rendered and
paid.

Held, by HIGBEE, J., dissenting, that a surety company is never
liable beyond the terms of the bond, and its obligation cannot
be extended by implication; that the liability against which the
surety company in this case undertook to protect and indemnify
the railroad company was solely in connection with ties fur-
nished by the tie contractors (the principals) to the railroad
company; that the sole issue in the trial of the suit between
the timber company and the railroad company, and the sole
issue in the trial of this case, was whether the timber com-
pany had sold certain ties to the railroad company and the tie
contractors, or whether the tie contractors had sold said ties
to the railroad company; that it conclusively appears by the
judgment in the former case of the timber company against the
railroad company that the ties were sold by the timber company
to the railroad company and the tie contractors, and that in
paying said judgment the railroad company paid its own debt,
and that said judgment, in view of the language of the bond,
is fatal to a recovery by the railroad company on the bond of
the amount of said judgment so paid.

4. ———: ———: ———: ———: **Res Adjudicata.** A former adjudi-
cation by which it was ruled that a timber company, having sold
ties to tie contractors and a railroad company upon a joint con-
tract, was entitled to recover for the value of the ties against the
railroad company alone, but not ruling that the railroad company
did not buy the ties from the tie contractors, was not a judicial
determination that the railroad company bought the ties from the
timber company, and not from the contractors, and hence the
judgment against the railroad company alone is not a bar to an
action by the railroad company on the bond of the tie contractors,
by which they agreed to guarantee the title to all ties sold by them
to the railroad company, to recover the amount of the judgment
rendered against it in favor of the timber company for the value of
ties delivered by the tie contractors to the railroad company and
paid for by it. [HIGBEE, J., dissenting.]

5. ———: ———: ———: ———: ———: **Concurring Identities.** The
concurrence of four well defined identities, namely, identity of the
thing sued for, identity of the cause of action, identity of persons
and parties to the action, and identity as to the quality of the
person for or against whom the claim is preferred, is necessary to
the successful interposition of the plea of former adjudication.
Besides, before an action can be held to be res *adjudicata* the parties

in the instant suit must have been adversaries in the former as to the matter at issue in this.

6. **LIMITATIONS: Action on Indemnity Bond: From Date of Damage.** An action upon a bond of indemnity, which provides for the payment of money or property upon a breach of the conditions, may be brought under the statute (Sec. 1316, R. S. 1919) within ten years after the cause of action accrued, and the cause of action accrues and the statute begins to run at the time the damage occurs, and where the bond guaranteed the buyer against loss in the purchase of railroad ties and warranted the seller's ownership and title thereto, and the buyer is subsequently sued by another dealer and is compelled by judgment to pay for ties sold by such dealer to but not paid for by the seller, although he is paid for them by the buyer, the buyer's cause of action on the indemnity bond accrued not earlier than the rendition of the judgment, possibly not earlier than the date he paid it, and an action begun in two years after the date of the judgment is not barred by limitations, although the sale of the ties occurred sixteen years before the suit on the bond was instituted.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*J. D. Johnson* for appellant.

(1)   Plaintiff amended petition, on which the case was tried, failed to state facts sufficient to constitute a cause of action against defendant; and the trial court therefore erred in overruling defendant's demurrer to the petition, and in refusing to give defendant's instructions at the close of plaintiff's evidence to the effect that under the pleadings and evidence plaintiff was not entitled to recover.   Watson Coal Co. v. James, 72 Iowa, 184; Tibbetts v. Moore, 23 Cal. 208; Sylvestri v. Missocci, 165 Mass. 337; Sec. 4239, R. S. 1899; Sec. 8249, R. S. 1909.   (2)   The amended petition failed to state a cause of action and there was an entire failure of proof of the cause of action as stated in said petition; therefore, the trial court erred in refusing to give defendant's instruction, offered at the close of all the evidence,

to the effect that under the pleadings and the evidence
plaintiff was not entitled to recover. Mill v. Elmore, 154
Mo. App. 651; Bauer v. Cabanne, 105 Mo. 110; Nofsinger
v. Hartnett, 84 Mo. 549; Reissans v. Whites, 128 Mo.
App. 135; Beers v. Wolf, 116 Mo. 179; School District
v. Green, 134 Mo. App. 421; Moore v. Title, 151
Mo. App. 256; Neuwirth v. Moydell, 188 Mo. App. 48;
State ex rel. v. Schaper, 152 Mo. App. 542; Am. Bond-
ing Co. v. Pueblo, 150 Fed. 17. (3) That portion of
defendant's answer, which the trial court struck out on
plaintiff's motion constituted new matter and a com-
plete affirmative defense, to plaintiff's cause of action;
therefore, the trial court erred in striking out said por-
tion of the answer. (4) The trial court erred in find-
ing and holding that, because defendant was a surety
on the bond in suit for hire, any ambiguity in the bond
sued on should be resolved against the defendant, or
that the provisions of the bond should be more strictly
construed against defendant than a similar bond would
be construed against a person who was not a surety
for hire. Lackland v. Renshaw, 256 Mo. 135; Southern
v. Bankers' Sur. Co., 184 S. W. 1030; Evans v. U. S.
Fid. Co., 195 Mo. App. 438; Trust Co. v. Trimbler, 199
S. W. 1052. (5) The breach of the bond, as alleged
in the petition, was not the proximate cause of the
damages, which it is also alleged resulted to plaintiff
from such breach; nor were the damages alleged such
as might reasonably have been expected to result from
said alleged breach; besides, there was an entire failure
of proof of said averments. The trial court, therefore,
again erred in overruling defendant's demurrerr to the
petition, in striking out parts of its answer, and in
refusing to give defendant's said two peremptory in-
structions to find for it. State ex rel. v. Farmer, 201
S. W. 955; State ex rel. v. Tittman, 134 Mo. 162; State ex
rel. v. Thompson, 81 Mo. App. 556; Howell v. Railway
Co., 171 Mo. App. 92; Tirny v. Hogan, 181 Mo. App.
48; Gourley v. Lumber Co., 185 Mo. App. 360. (6)
According to the averments of the petition, the only

breach of the bond occurred in 1899, sixteen years before the institution of this suit, and the same was fully barred by the Statute of Limitations at the time this suit was brought. State v. Tittman, 134 Mo. 168; Salmon Falls Bank v. Leyser, 116 Mo. 51; State ex rel. v. Thompson, 81 Mo. App. 556; State ex rel. v. Packard, 201 S. W. 954; Sec. 1888, R. S. 1909.

*J. W. Jamison, Henry E. Haas* and *Carl S. Hoffman* for respondent.

(1)  This being a law case the appellate court will not review or weigh the evidence further than to see that the judgment of the trial court is supported by substantial testimony. Where a case is tried by the court, sitting as a jury, the findings of fact by the trial court are ''conclusive'' and just as binding on the appellate court as any ''conceded'' fact would be. State ex rel. Bank v. Sturgis, 276 Mo. 559, 208 S. W. 458; In re Lankford's Estate, 272 Mo. 1, 197 S. W. 147; Cousins v. White, 246 Mo. 296, 309; Willis v. Reed, 190 S. W. 377; Cement Co. v. Bruce, 160 Mo. App. 246; Ross v. Grand Pants Co., 170 Mo. App. 291, 156 S. W. 92; Grocery Co. v. Hotel Co., 183 Mo. App. 429, 166 S.W. 1125. (2) Plaintiff's. cause of action was not barred by any statute of limitation. Under the statute and decisions plaintiff had the right to commence its action at any time within ten years ''after the cause of action accrued.'' This being an indemnifying bond, plaintiff's cause of action did not ''accrue'' within the meaning of the statute until it had been damnified, that is, until it paid the judgment of the Bagnell Timber Company, and the costs of that case, in the year 1913. Secs. 1887, 1888, R. S. 1909; State ex rel. v. Logan, 195 Mo. App. 171; Boyd v. Buchanan, 176 Mo. App. 56; Rowsey v. Lynch, 61 Mo. 563; State ex rel. v. Tittmann, 134 Mo. 162; Lesem v. Neal, 53 Mo. 412; State ex rel. v. Finn, 98 Mo. 541; State ex rel. v. Hollenbeck, 68 Mo. App. 366; 2 Wood on Limitations (4 Ed.), sec. 175; 15 L.R.A. (N.S.)

pp. 156, 164; 19 Am. & Eng. Ency. Law (2 Ed.), 193; Purcell v. Land Title Co., 94 Mo. App. 5; Huse v. Ames, 104 Mo. 91; 16 Am. & Eng. Ency. Law (2 Ed.), 178. (3) The judgment recovered by the Bagnell Timber Company against the Railway Company in the Circuit Court of Pettis County was not *res adjudicata* against the plaintiff in this action. To make matters *res adjudicata* there must be a concurrence of the four conditions following: Identity of the thing sued for, identity of the cause of action, identity of persons and parties to the action, identity to the quality of the person for or against whom the claim is made. These necessary elements are lacking in the instant suit. Finkelnburg on Appellate Practice (2 Ed.), p. 170; State to use v. Hollinshead, 83 Mo. App. 678; Pickel Stone Co. v. Wall, 108 Mo. App. 495; Winham v. Kline. 77 Mo. App. 36, 46; 24 Amer. & Eng. Ency. Law (2 Ed.), 778. Moreover, before the plea of former adjudication can be invoked it must appear that the parties were adversaries in the first action. Here, neither the parties were adversaries nor is the cause of action the same. 24 Amer. & Eng. Ency. Law (2 Ed.), 731; Herman on Estoppel & Res Judicata, sec. 138; McMahan v. Geiger, 73 Mo. 145; City of Springfield v. Plummer, 89 Mo. App. 515; O'Rourke v. Lindell Ry. Co., 142 Mo. 342; Womach v. City of St. Joseph, 201 Mo. 467, 480; Charles v. White, 214 Mo. 187, 211; Comstock v. Keating, 115 Mo. App. 372; Canterbury v. Kansas City, 130 Mo. App. 1; State Bank v. Bartle, 114 Mo. 276. (4)  The bond in suit is a very clear and comprehensive document, but if it can be said to contain any ambiguities these ambiguities must be resolved against the appellant, it being a surety for hire and having drawn the bond for a consideration. Barton v. Title Guaranty Co., 192 Mo. App. 564; Lackland v. Surety Co., 256 Mo. 133; Rule v. Anderson, 160 Mo. App. 347; Boppart v. Surety Co., 140 Mo. App. 675; Grocery Co. v. Guaranty Co., 130 Mo. App. 421, 429; Roark v. Surety Co., 130 Mo. App. 401, 407; American Surety Co. v. Pauly, 170 U. S. 133. The operative words of a deed,

or other instrument, which are expressed in clear and unambiguous language, are not to be controlled, cut down or qualified by a recital or narrative of intention. Beal's Cardinal Rules of Legal Interpretation (2 Ed.), p. 165; 1 Brandt on Suretyship (3 Ed.), sec. 192; Ashbaugh v. Ashbaugh, 273 Mo. 353; Ferguson v. Dent, 8 Mo. 667; Dryden v. Holmes, 9 Mo. 135; Carr v. Lackland, 112 Mo. 457; 16 Am. & Eng. Ency. Law (2 Ed.), 175.

WALKER, J.—This suit was brought by the Missouri, Kansas & Texas Railway Company against the American Surety Company in the Circuit Court of the City of St. Louis on a bond of indemnity given by the firm of Graham & Miller as principal and the defendant, the American Surety Company, as surety, to the plaintiff in the sum of $10,000. Upon a trial to the court there was a judgment in favor of the plaintiff, from which defendant appeals. The bond sued on was as follows:

"Know All Men by These Presents, That we, J. T. Miller and L. G. Graham, composing the firm of Graham & Miller, principals, and American Surety Company of New York, as surety, are indebted to the Missouri, Kansas & Texas Railway Company, hereinafter called the 'Railway Company,' in the penal sum of ten thousand dollars, for the payment whereof well and truly to be made we hereby bind ourselves, our heirs and representatives, successors and assigns, jointly and severally, by these presents.

"The obligation of this bond is such that,

"Whereas, The said Graham & Miller are general railroad tie contractors, engaged in the business of furnishing to railway companies crossties, switch ties and lumber, in the State of Missouri; and,

"Whereas, The said Graham & Miller for several years past have been selling ties and lumber to the Railway Company and desire to furnish ties and lumber to said Railway Company during the year 1899; and,

"Whereas, The Railroad Company is willing to continue purchasing of said Graham & Miller ties and

lumber, from time to time as it may want them, provided the same conform to specifications and requirements of the Railway Company and are accepted by its fully authorized agent after inspection; and, provided further, that said Graham & Miller will hold it, the Railway Company, harmless by reason of any and all claims which may be made against it by laborers, materialmen and others, to and on account of any ties and lumber furnished by them to the Railway Company, between January 1, 1898, and January 1, 1900.

"Now, Therefore, If the said Graham & Miller shall well and truly protect and indemnify the Railway Company against all loss and damage, costs and attorney fees, by reason of any claims which may be made against the Railway Company on account of any ties and lumber which have been or may be furnished by them and accepted by the Railway Company, as aforesaid, by any person or persons whatsoever, and warrant and defend their title to all such ties and lumber, then this obligation to be void, otherwise to be and remain in full force and effect."

Omitting the formal allegations of the petition as to the nature of the parties, the setting out of the bond according to its tenor, the breach of same and defendant's liability thereon, the salient facts alleged are that during the year 1899 plaintiff purchased from Graham & Miller, and said firm furnished to plaintiff, a large number of railway ties, at a specified price, which aggregated $21,207.10, and upon the acceptance by and the delivery to the plaintiff of these ties the latter paid Graham & Miller the aggregate amount due therefor in full; that after plaintiff had paid Graham & Miller the Bagnell Timber Company brought a suit in the Circuit Court of Pettis County against Graham & Miller and the Missouri, Kansas & Texas Railway Company, the plaintiff herein. Before a trial the Timber Company dismissed as to Graham & Miller and proceeded against the Railway Company alone. In this action it was claimed that there was a balance due the Timber Company from the firm

of Graham & Miller and the Railway Company on account of the same ties which had been sold and delivered by said firm to the Railway Company and had been paid for by the latter. In this petition the Timber Company prayed that the judgment thus sought be declared a lien on the lines of the Railway Company; that upon the institution of that suit the Railway Company notified the American Surety Company, the defendant herein, of said action, and that the Railway Company had already paid Graham & Miller the full amount due said firm for the ties furnished by them to the Railway Company for which the Timber Company was then demanding payment, and that the Railway Company would look to said Surety Company to protect it from any further payment on account of said ties; that said Surety Company, the defendant herein, failed and refused to pay or to cause said Timber Company to be paid the amount claimed by it, but requested the Railway Company to prosecute the suit to a final judgment, which it did; that the history of this litigation and the opinions of the Supreme Court in connection therewith are found in 180 Mo. 420, 242 Mo. 11, and 250 Mo. 514; that by the decision rendered in the case last cited a personal judgment was finally affirmed against the plaintiff Railway Company in favor of the Timber Company and in satisfaction of said judgment plaintiff was compelled, in July, 1913, to pay the Timber Company the sum of $9,963 and interest on account of the same ties for which plaintiff had therefore paid Graham & Miller, and $436.50 costs incurred in the litigation, to plaintiff's total damage in the sum of $12,400.13; wherefore plaintiff prayed judgment for the penalty of said bond, to-wit, the sum of $10,000.

Defendant, answering, admitted the execution of the bond, the former litigation pleaded, the result of same, the costs accrued, the subsequent suit by the Timber Company, the judgment rendered in favor of that company against the Railway Company and the payment of such judgment by the latter, followed by a general denial.

Further answering, the defendant sought to set up as *res adjudicata* the litigation in the Circuit Court of

Pettis County wherein the Timber Company was plaintiff and the Railway Company and Graham & Miller were defendants.  On motion this part of the answer was stricken out and the defendant filed a term bill of exceptions.  At the trial, however, this defense was permitted to be interposed, subject to such objections as might be made thereto.

By consent, a plea of the Statute of Limitations theretofore stricken out of defendant's answer was reinstated, and plaintiff filed a reply alleging that it contested the suit brought by the Timber Company at the special instance and request of the Surety Company, the defendant herein, and with the understanding that upon the termination of that litigation, if the same resulted unfavorably to the Railway Company, the rights and liabilities as between this plaintiff and this defendant in the bond suit would then be determined.  A jury having been waived, the case was heard by the court sitting as a jury in February, 1919, in the division presided over by Hon. Hugo Grimm.  At the April term, 1919, the court found the issues joined in favor of the plaintiff and assessed its damages at $10,000, the full penalty of the bond.  From this judgment, as stated, the defendant has appealed.

I.  This is an action at law.  It was tried by the court sitting as a jury.  When a case of the character at bar is thus tried, the province of the Supreme Court extends no further than to ascertain if the judgment is supported by any substantial testimony.  When this has been determined, the findings of pertinent facts by the trial court are as conclusive as if their verity had been formally conceded.  So firmly embedded is this rule in our appellate procedure that it is scarcely necessary, except as a matter of form, to cite precedents to sustain it.  Some of the later cases reasserting this doctrine are State ex rel. Bank v. Sturgis, 276 Mo. 559, 208 S. W. 458; In re Lankford's Estate, 272 Mo. 1. 197 S. W. 147; Woods v. Johnson, 264 Mo. 1, c. 293, 174 S. W.

*Appellate Court's Province as to Review of Evidence.*

375; Hatton v. St. Louis, 264 Mo 634, 175 S. W. 888.; Cousins v. White, 246 Mo. l. c. 309.

II. The findings of the trial court, while based upon all of the evidence, have more particular reference to the testimony upon which the defendant relies to sustain its contentions. In the consideration of these con-
Rule as to tentions it should be kept in mind that the
Bonds of general rule that sureties are the favorites of
Surety
Companies. the law and that contracts made by them should be construed most strongly in their favor has no application here. The defendant is a corporation organized and empowered to act as surety for a price. Its obligations are akin to those of an insurance company; its operations are purely commercial and are exercised solely for profit and bear no resemblance to the relation sustained by a personal surety to his principal. The alleged justification for the application of the rule to personal sureties is that their contracts are held to be in the nature of favors to the parties and are therefore founded upon considerations not moving to themselves but to the principals in the contracts for which they become sponsors. Here the consideration moves to the defendant. Its obligations are, therefore, to be construed like other contracts—in accordance with the reasonable intent of the parties as plainly indicated by their terms. [So. R. & F. Co. v. Bankers Surety Co., 184 S. W. (Mo.) l. c. 1033; Lackland v. Surety Co., 256 Mo. l. c. 140; Guarantee Co. v. Bank, 183 U. S. 402; Am. Surety Co. v. Pauly, 170 U. S. 133.] This rule of construction is applicable to obligations of companies of the character at bar, despite the provisions of Section 1209, Revised Statutes 1909, now Section 1002 Revised Statutes 1919. [Barton v. Title Guar. & Surety Co., 183 S. W. 694; Dorr v. Bank & Surety Co., 218 S. W. 398.]

III. Of first consideration is the language of the bond itself, which must, of course, be read in its entirety. Ambiguities therein, if any, are, as in construing a policy

**Bond: Con-
struction of.** of insurance, to be resolved against defendant. [Henderson L. & P. Co. v. Maryland Casualty Co., 153 N. C. l. c. 279; Fitger v. Am. Bond Co., 115 Minn. l. c. 83; Forest County v. United Surety Co., 149 Wis. 327; City-Cap. Bank v. Hilson, 59 Fla. l. c. 219.] The meaning of the bond, as indicated by its words, having been ascertained, we seek, by placing ourselves as nearly as possible in the attitude of the parties at the time to determine their intentions and effectuate their purpose. In ascertaining such intentions not only will the language of the bond be taken into consideration, but the situation and circumstances surrounding the parties at the time the obligation was made. The intentions ascertained, the object or purpose sought to be effectuated should not be defeated by a narrow interpretation or one favorable to the defendant if there be another construction equally admissible under the terms of the bond; or, stated somewhat conversely, if the bond is fairly open to two constructions, one of which will uphold while the other will defeat the plaintiff's claim, that most favorable to it should be adopted, provided, of course, in so doing the manifest intention of the parties is not nullified. [Grocery Co. v. Fidelity & Guar. Co., 130 Mo. App. l. c. 428; Fairbanks Can. Co. v. London Guar. Co., 154 Mo. App. 327, 133 S. W. 664; Am. Surety Co. v. Pauly, 170 U. S. 133, 160; Ballard Co. v. U. S. Fid. Co., 150 Ky. 236, 150 S. W. 1, Ann. Cas. 1914C, 1211 and notes; Hormel v. Am. Bond Co., 115 Minn. 288, 33 L. R. A. 513 and notes.]

The plaintiff had a contract with Graham & Miller for the purchase from them of railway ties at a specified price.

These ties Graham & Miller were to go into the market and buy and deliver to the plaintiff. To enforce the performance of this contract plaintiff required Graham & Miller to give it a bond. This bond, by its express terms, was for the protection and indemnity of plaintiff against all loss and damage by reason of any claims which might be made against plaintiff on account of any

ties which may have been furnished by Graham & Miller to and accepted by plaintiff, and to warrant and defend the title thereto.

From these terms it is evident that the purpose of the plaintiff in requiring the bond was protection; that of Graham & Miller in giving it was to insure a continuance of their business relations with the plaintiff; and that of the defendant for a stipulated fee to make the plaintiff whole in the event of the default of Graham & Miller. Thus it appears that the relations of the parties, as disclosed by the terms of the bond itself, were those of buyer, seller and indemnitor. Other provisions of the bond lend force to this conclusion, viz.: that Graham & Miller, tie contractors, engaged in furnishing railway companies with ties, have for several years been furnishing plaintiff with ties and that the latter is willing to continue to buy from them if the ties furnished conform to the specifications and requirements of plaintiff and are accepted by its agents after inspection—this upon the condition that Graham & Miller will protect and indemnify plaintiff against all loss and damage by reason of any claims which may be made against the plaintiff on account of any ties which have been or may be furnished by Graham & Miller and accepted by plaintiff and to warrant and defend the title thereto.

IV. The testimony disclosed that the total amount paid by the plaintiff to Graham & Miller for ties during the period nominated in the bond was $21,207.10. The different statements of account rendered by Graham & Miller against plaintiff and upon which the various payments were made by plaintiff to Graham & Miller, or literally to the Bank of Commerce of St. Louis for them, aggregating the above amount, were each in the following form: "Missouri, Kansas & Texas Railway Company to Graham & Miller, Dr.," followed by a statement of the ties furnished and the amount due for same. There is no question but that the amount involved in this litigation, which has heretofore been paid by plaintiff to Graham &

*Review of the Testimony.*

Miller, is for ties included in the invoices or statements referred to, but no attempt is made in this or in any former litigation to segregate or distinguish them from any of the other ties furnished by Graham & Miller to plaintiff. That they were all delivered to or placed upon the right of way of the plaintiff there is likewise no question. This, however, is not determinative of any issue here involved. All of the parties were necessarily familiar with the relations they sustained towards each other and the character of plaintiff's business, which required such deliveries of the ties whether purchased directly by it or through the medium of its contractors. Despite the manner of the deliveries, therefore, there is, in our opinion, ample evidence to sustain the conclusion that all of these ties were bought by Graham & Miller directly from the Bagnell Timber Company for plaintiff and were delivered to, accepted by and paid for in full by plaintiff. If not so, what was the reason or purpose of those invoices and statements of account rendered in the ordinary course of business by Graham & Miller to the plaintiff and the latter's payment of all of same without cavil as to the regularity of the accounts or plaintiff's liability thereon? Other testimony offered by plaintiff tended to show that this entire transaction, so far as the plaintiff and Graham & Miller were concerned, was regarded as a contract of purchase by the former from the latter and that the total liability thus incurred was discharged in accordance with this understanding, which we cannot reasonably conclude was not indicative of the intention of the parties. We are not left to this evidence alone to sustain this conclusion. The entire amount due by plaintiff to Graham & Miller for these ties was paid by plaintiff directly to the Bank of Commerce of St. Louis under an assignment made to said bank by Graham & Miller and was receipted for by said bank and credited to the account of Graham & Miller. In addition, the correspondence of Graham & Miller with plaintiff at the time cannot be otherwise construed than as sustaining the conclusion that these sales, as then understood by all

of the parties, were made in the first instance by the Timber Company to Graham & Miller and by the latter to the plaintiff. If this were not true, then why the creation of the intermediary or purchasing company, the execution of the bond and the manner in which the accounts were rendered and paid? The evasive letters of the defendant to the plaintiff in the year 1900 lend no substantial aid in the settlement of the question involved and are not considered in the summing up of the testimony. Moreover, the conduct and correspondence of the Timber Company made a part of the evidence herein furnishes further evidence as to the nature of the transaction out of which the controversy at bar arose. Note, in addition, these facts:

Before any lawsuit was commenced and when the matter was fresh in the minds of the officers of the Timber Company, that company served notice of a materialman's lien on the plaintiff, where this language is used:

"Take notice, that we hold a claim against the Missouri, Kansas & Texas Railroad Company for railroad ties furnished and delivered to said Railroad Company, under and pursuant to a contract with Graham & Miller, tie contractors of said Railroad Company, as shown by the following account, to-wit:"

Then follows an itemized statement of the Timber Company's account, identical with the account it subsequently preferred and prosecuted against the Missouri, Kansas & Texas Railway Company and Graham & Miller.

Further than this, before the Timber Company brought suit against the Railway Company and Graham & Miller, William Bagnell, the president of the Timber Company, sent the following notice to Graham & Miller:

"We thereby serve notice on you that if the balance of the account on ties delivered to the M., K. & T. Ry. is not fully paid by October 9th, that we will file a lien on the M., K. & T. Ry. on that day, and we wish you would have the kindness to make this settlement so as to avoid this trouble and expense,"

If further persuasive proof were needed to define the relation which the firm of Graham & Miller, the principals in the defendant's bond, sustained to the Timber Company in this transaction, it is supplied by this notice.

It is quite clear that the Timber Company at the time had some doubts about its ability to maintain a lien claim against the Missouri, Kansas & Texas Railway Company, and so it amended its notice, and subsequently claimed that the ties were sold to the plaintiff and Graham & Miller jointly. But it is now contended that the judgment rendered in favor of the Timber Company against the plaintiff established the fact that the ties in controversy were sold by the former to the latter and not to Graham & Miller and hence there is no breach of the bond. The probative force of this fact as constituting a plea of former adjudication we will discuss later. Not only was this fact not established, but it was not necessary to establish it to entitle the Timber Company to a recovery in that action. Graham & Miller may have so conducted the business with plaintiff's knowledge as to render the latter liable to the Timber Company for the ties, without destroying the relation of seller and buyer between Graham & Miller and plaintiff. And while the enforced satisfaction of the liability of the plaintiff to the Timber Company would be a valid defense to an action by Graham & Miller against the plaintiff, it would not destroy the latter's right of action against the former, or the surety on their bond, in a suit to recover the amount paid by plaintiff to the Timber Company.

We therefore rule that the proof here adduced is sufficient to sustain the issues pleaded by plaintiff and we affirm the ruling of the trial court to that effect.

Before dismissing the question as to the quantum of proof it is not inappropriate to say, preliminary to the discussion of the next contention, that we have found the testimony for the plaintiff in the instant case much fuller and more forceful than in the preceding cases in relation to the matter at issue.

V.  The rulings of this court in the former suits concerning the matter in controversy will disclose, whether it has been judicially determined, as contended by defendant, that the Bagnell Timber Company sold these ties to the Railway Company and hence there is no liability on the part of the defendant.  We have examined with some degree of care not only the opinions but the files in the three cases heretofore cited in which this court ruled upon certain features of this controversy.  What, in short, did the cases in question determine?

Former Adjudication.

In the first (180 Mo. 420)., the Bagnell Timber Company brought suit to recover a balance claimed to be due on the ties here in controversy against the Missouri, Kansas & Texas Railway Company and Graham & Miller upon a joint contract.  This proceeding resulted in a judgment for the plaintiff, in which this court, upon an appeal therefrom, reversed and remanded the case, and held, first, that the plaintiff was not entitled to a lien against the Railway Company, and, second, that in a suit on a joint contract a personal judgment could not be rendered against the Railway Company, for the reason that there was no proof of the existence of the joint contract which had been sued on.

In the second (242 Mo. 11), between the same parties as in the first, there being no service upon Graham & Miller, the suit was dismissed as to them.  Upon an appeal from a judgment for defendant this court reversed and remanded the case, and receded from its ruling in the former case as to the nonliability of one defendant in a suit on a joint contract, and held that, although the suit was brought on a joint contract, if the evidence showed that the plaintiff made the contract with the Railway Company, either jointly or severally, and the record afforded evidence of the submission of that issue to the jury, then the plaintiff would be entitled to recover.  This in recognition of the statute (Sec. 2769, R. S. 1909, now Sec. 2155, R. S. 1919) declaring that all contracts which by the common law are joint only shall be contrued to be joint and several.

In the third (250 Mo. 514), between the same parties, there was, as before, no service on Graham & Miller and the suit was dismissed as to them. A trial resulted in a judgment for plaintiff, the Timber Company, which, upon appeal, was affirmed by this court. After ruling upon the admission of certain testimony not relevant here, the court held that there was evidence tending to prove that the contract for the sale of the ties was made between the plaintiff and the defendant and that this issue was properly submitted to the jury.; and that two instructions approved in the former case (242 Mo. 11) were not erroneous, which declared, among other things, that if the jury found the facts as therein stated and that the ties were delivered either under a contract made by plaintiff with the Railway Company and Graham & Miller *or the Railway Company alone* and that a balance was yet due plaintiff, then the finding should be for it and its damages assessed as stated. The objection urged to these instructions was the insertion in each of the above italicized phrase, which the court held to be authorized under the evidence and in view of the nature of the contract.

This inquiry discloses no ruling in either of these cases, either in express terms or by necessary implication, which lends color to the contention that it has heretofore been judicially determined that the Railway Company did not buy these ties from Graham & Miller but from the Bagnell Timber Company. In the absence of such a ruling the futility of the contention becomes evident. All that was determined which constituted a ruling decisive of that case was the liability of the Railway Company to the Timber Company. With the reasons therefor we are not concerned further than they may be held to affect the disposition of the instant case.

A more cogent reason exists, however, why the plea of former adjudication cannot properly be interposed in the instant case. It is elementary that the concurrence of four well defined identities are necessary to the successful interposition of this plea. They are: identity of

the thing sued for; identity of the cause of action; identity of persons and parties to the action; and identity as to the quality of the person for or against whom the claim is preferred. [Scheurich v. Empire Dist. Elec. Co., 188 S. W. (Mo.) l. c. 117; Dibert v. D'Arcy, 248 Mo. 617, 154 S. W. 1116; State to use v. Hollinshed, 83 Mo. App. 678; Pickel Stone Co. v. Wall, 108 Mo. App. 495.]

Comparing the suit at bar with the three former ones we have reviewed, concerning matters incident to this controversy, we find that neither the parties nor the causes of action were the same. In the latter the plaintiff was the Bagnell Timber Company, and the defendants, as the suits were brought, were the Missouri, Kansas & Texas Railway Company and Graham & Miller; while in the former, plaintiff is the Missouri, Kansas & Texas Railway Company and the defendant is the American Surety Company. In the Bagnell suits the cause of action was for a balance due on an account, which would have been barred in five years, whereas in the instant case the cause of action is based on a bond in writing under seal which was not barred for ten years. These facts will suffice to demonstrate that at least three of the required identities are absent here, to-wit, that of the thing sued for, the cause of action and the persons or parties thereto.

In addition, the well-established rule must not be overlooked that before an action can be held to be *res adjudicata* the parties must have been adversaries in the first suit. A standard text thus concisely states this doctrine:

"Not all the parties to a suit are necessarily concluded by the judgment or decree in a subsequent suit between the same parties, but only those between whom the matter in issue in the second suit was adjudicated. To be concluded they must have been adversary parties." [24 Am. & Eng. Ency. of Law (2 Ed.), p. 731.]

Even more forceful is the language of a well recognized treatise on the subject, as follows:

"In order to make a judgment conclusive on parties they must be adversary parties in the original action.

Thus, a judgment against A and his sureties is no bar in an action between one surety and his co-sureties to recover of each his proportionate share of a judgment of amercement that had been collected of him; while it establishes the demand, it does not establish the liability of the sureties between themselves; that point is not before the court in the action 'wherein the original judgment was rendered." [Herman on Estoppel and Res Judicata, sec. 138.]

In harmony with the rule as thus declared is the ruling of this court in Charles v. White, 214 Mo. l. c. 211, as follows:

"It may be said that unless the defendants contest an issue with each other, either upon the pleadings between themselves and the plaintiffs, or upon cross-pleadings between themselves, the judgment or decree will not be *res adjudicata* in subsequent litigation between them. There can be no doubt that upon proper pleadings a judgment may determine the rights of the defendants even between themselves, and our code provides for such a proceeding, but a judgment against defendants, if there are no issues between them, does not bind them as against each other." (Citing cases.)

To a like effect are Womach v. St. Joseph, 201 Mo. l. c. 480; Garland v. Smith, 164 Mo. 1; O'Rourke v. Lindell Ry. Co., 142 Mo. 342; Springfield v. Plummer, 89 Mo. App. 515; McMahan v. Geiger, 73 Mo. 145. There is, therefore, no merit in the plea of *res adjudicata* interposed in this case.

VI. It is further contended that the damages sought to be recovered are not within the terms of the contract. In our former discussion of the terms of the bond, the allegations of the petition and the nature of the evidence, we incidentally at least disposed of this contention. In the final disposition of the same, however, it may not be inappropriate to again say that the allegations of the petition were based upon the terms of the bond, that a breach of its co-

Damages Pleaded
Within Terms
of Contract.

venants was pleaded in that Graham & Miller, the principals, and the American Surety Company, the defendant, as surety, had violated said covenants in not holding the plaintiff harmless by reason of a claim made against it by the Timber Company on account of ties furnished by Graham & Miller to the plaintiff. In view of these specific allegations, supported by the proof adduced, the error assigned that the damages sought were not within the terms of the contract is shown to be unfounded.

VII. It is contended that plaintiff's cause of action is barred by the statute. In a action upon a bond of indemnity, as at bar, in which the language Statute of of the writing provides for the payment of Limitations. money or property upon the breach of the conditions therein stated, suit may be brought thereon within ten years after the cause of action shall have accrued. [Sec. 1888, R. S. 1909, now Sec. 1316, R. S. 1919.] The instrument sued on is held to be within the statute when it provides in express terms or by fair implication for the payment of money or property, and this rule is held to apply although the plaintiff may, to make out his case, be required to go beyond the terms of the writing to show performance on the part of the plaintiff and a breach on the part of the defendant. [Knisley v. Leathe, 256 Mo. l. c. 360; Curtis v. Sexton, 201 Mo. l. c. 230.] A cause of action accrues upon an instrument of the character of that at bar when the actual damages are sustained, in consequence of the breach of the contract. While it is practically conceded by all of the authorities that in cases of breach of contract the Statute of Limitations begins to run against the right of the person damaged to recover, from the time of the breach, and not from the time actual damages are sustained in consequence thereof. However, in case the contract broken is one of indemnification against loss or damage, the general rule is that the cause of action accrues and the Statute of Limitations begins

to run at the time the damage occurs. [Rowsey v. Lynch, 61 Mo. l. c. 563; Purcell v. L. T. Guar. Co., 94 Mo. App. 5.]

This court, speaking through Hough, J., in the Rowsey Case, said:

"If the covenant in question is simply a contract of indemnity, then there was no breach thereof until the plaintiff suffered damages by the sale of his property on the 8th day of November, 1862, and his right of action was not barred. If, on the contrary, the covenant in question is not a contract of indemnity, but an affirmative covenant to pay a certain sum of money at specified times, then a right of action arose in favor of the plaintiff, upon the failure of the defendant to pay at such times."

In State ex rel. v. Logan, 195 Mo. App. 175, a well considered case recently decided by the Springfield Court of Appeals among other things the court said:

"According to defendant's contention relators' cause of action was barred before it came into being, for certainly relators never had any cause of action prior to their having any dealings with or interest in this land. To so construe the statute is violative of the fundamental rule applicable to the construction of all limitation statutes, to-wit: that the same begins to run only when the cause of action asserted accured to the person asserting it and it does not accrue in the legal sense until it comes into being and the parties benefited have a right to assert same in court (25 Cyc. 1067)."

In addition to the numerous authorities cited and discussed in the Logan case, are the following: Huse v. Adams, 104 Mo. 91; State ex rel. Chatham v. Finn, 98 Mo. l. c. 541; Lesem v. Neal, 53 Mo. 412; State ex rel. Owen v. Hollenbeck, 68 Mo. App. 366; Boyd v. Buchanan, 176 Mo. App. 56.

An exhaustive note to Aachen v. M. & F. Ins. Co., 15 L. R. A. (N. S.) l. c. 164, reviews numerous cases de-

cided by courts of last resort in other jurisdictions in harmony with our own rulings, in which it is held, in suits upon bonds of indemnity, that the cause of action accrues and the statute of limitations begins to run at the time the damage occurs. We find no authority to the contrary.

The judgment in favor of the Bagnell Timber Company against the plaintiff was affirmed by this court in 1913 and paid in full in the same year. The action at bar was brought in 1915. Regardless, therefore, of whether it be held that the cause of action accrued at the time of the affirmance of that judgment or upon its payment by plaintiff, the instant case was timely brought. The plea of the bar of the statute is therefore without merit.

Other contentions have not been preserved in a manner to entitle them to a review.

Aside from what we regard as clear and compelling precedents cited in support of the conclusions reached herein, the righteousness of plaintiff's cause appeals strongly to our sense of justice. Plaintiff has twice paid for these ties—each time in good faith—once under its contract and again in satisfaction of a judicial determination of its liability. To hold now that it cannot recover from a paid surety of a principal whose default rendered imperative the last payment, would, in our opinion, work a grievous wrong.

The judgment of the trial court should, therefore, be affirmed.

All concur, except *Higbee, J.*, who dissents in separate opinion, and *Woodson, J.*, who dissents.

HIGBEE, J. (dissenting).—This suit was instituted in the Circuit Court of the City of St. Louis, returnable to the February term, 1915, on an indemnity bond executed, April 17, 1899, by Graham & Miller as principals and by appellant as surety, to respondent as obligee, called therein Railway Company, in the penal sum of $10,000. Said bond recites:

"The obligation of this bond is such that,

Whereas, The said Graham & Miller are general railroad tie contractors, engaged in the business of furnishing to railway companies crossties, switch ties and lumber, in the State of Missouri; and,

"Whereas, The said Graham & Miller for several years past have been selling ties and lumber to the Railway Company and desire to furnish ties and lumber to said Railway Company during the year 1899, and,

"Whereas, The Railway Company is willing to continue purchasing of said Graham and Miller ties and lumber, from time to time as it may want them, provided the same conform to specifications and requirements of the Railway Company and · are accepted by its fully authorized agent after inspection; and, provided further, that the said Graham, & Miller will hold it, the Railway Company, harmless by reason of any and all claims which may be made against it by laborers, materialmen and others, to and on account of any ties and lumber furnished by them to the Railway Company, between January 1st, 1898, and January 1, 1900.

"Now, Therefore, If the said Graham & Miller shall well and truly protect and indemnify the Railway Company against all loss and damage, costs and attorney fees, by reason of any claims which may be made against the Railway Company on account of any ties and lumber which have been or may be furnished by them and accepted by the Railway Company, as aforesaid, by any person or persons whatsoever, and warrant and defend their title to all such ties and lumber, then this obligation to be void, otherwise to be and remain in full force and effect."

The plaintiff, at and prior to that time, owned and operated a line of railroad running through the states of Missouri, Kansas and Oklahoma. The amended petition, for breaches of said bond, charges in substance that, pursuant to said arrangement, between April 28 and August 1, 1899, Graham & Miller furnished and delivered to plaintiff 49,320 ties of the value of $21,207.10; that after plaintiff had paid said sum to Graham & Miller,

the Bagnell Timber Company, on or about December 23, 1899, commenced an action in the Circuit Court of Pettis County against plaintiff and Graham & Miller, "wherein and whereby it was claimed by said plaintiff in said suit that there was a balance of $5,422.50 due to it from said defendant in said suit on account of certain of the ties so as aforesaid furnished by the said Graham & Miller to plaintiff and paid for by plaintiff as hereinbefore stated, and for which it prayed judgment and that the judgment should be declared a lien upon the lines of the said Missouri, Kansas & Texas Railway Company within the State of Missouri." That plaintiff gave notice of said suit to defendant surety company, and that plaintiff had paid Graham & Miller in full for said ties, and that it would look to defendant to protect it from further payments and expenses in connection with said matter, but defendant refused to defend said suit and requested plaintiff to fight said suit to a finish, which plaintiff did at great cost and expense; that the Bagnell Timber Company dismissed said action as to Graham & Miller; that there were three trials and judgments rendered in said action which were appealed to this court; that on the third trial the Bagnell Timber Company, on December 7, 1912, recovered judgment against plaintiff for the sum of $9,654.12, and costs taxed at $436.50, which was affirmed on appeal May 31, 1913. [See Bagnell Timber Company v. Missouri, Kansas & Texas Railway Company, 180 Mo. 420, 242 Mo. 11, and 250 Mo. 514.] Plaintiff prayed that its damages be assessed at $10,400.12, and that it have judgment for the penalty of the bond.

The appellant demurred to said petition on the ground that it did not state facts sufficient to constitute a cause of action against defendant, in that, "It appears from the averments of said amended petition that the final judgment alleged to have been obtained by said Bagnell Timber Company, the plaintiff, was for and on account of ties by said Bagnell Timber Company to plaintiff, and not for ties sold or furnished by said Graham &

Miller to plaintiff, and that the non-payment of said judgment by said Graham & Miller or by this defendant did not constitute a breach of the bond in suit, nor entitle plaintiff to recover against defendant in this action.'' The demurrer was overruled.

The defendant, by its answer, admitted that the plaintiff and defendants are corporations; admitted the execution of the bond sued on; that the Bagnell Timber Company, a corporation, on or about December 23, 1899, commenced an action in the Circuit Court of Pettis County against said J. T. Miller and L. G. Graham, co-partners, and plaintiff herein, as stated in the petition; that three trials were had in said cause, and that the judgment rendered on the third trial was affirmed on appeal by the Supreme Court for the sum claimed by the defendant, and that plaintiff on July 1, 1913, paid said judgment, interest and costs, but defendant denies generally all and singular the other allegations in said petition contained.

The cause was tried to the court at the February term, 1919, and taken under advisement. Thereafter, at the April term, on April 7, 1919, the court rendered its finding and judgment in favor of plaintiff and against the defendant, assessing the plaintiff's damages for the breach of said bond in the sum of $10,000, from which an appeal was duly taken.

The pleadings, evidence, instructions to the jury and the judgment in the Bagnell Timber Company case were read in evidence. The amended petition in that case charges, in substance, that on or about April 20, 1899, the Bagnell Timber Company entered into an agreement with the said Railway Company and Graham & Miller, whereby it undertook and agreed to deliver and furnish to defendants $50,000 oak railroad ties to be delivered at St. Louis, Sedalia, and Wagoner, I. T., as defendants might direct, and defendants undertook and agreed to pay plaintiff forty-three cents per tie for first class and thirty-three cents per tie for culls; that there is a balance due said Bagnell Timber Company from the defendants in said cause of the sum of $5,422.50 for ties

delivered by plaintiff to the defendant railway company on the tracks of said railway company at Wagoner, I. T., in accordance with the terms of said agreement, between the months of April and August, 1899, both inclusive, as appears by an itemized account thereto attached; that said balance became due on August 1, 1899, and within ninety days thereafter, to-wit, on October 27, 1899, the plaintiff, in order to establish its lien for said sum upon the railway company as aforesaid, did file said account, etc. (On the first appeal it was held the Bagnell Timber Company was not entitled to a lien on that part of the railroad which lies in this State, the material having been used in another State).

The amended answer of the Railway Company admitted that the Bagnell Timber Company delivered upon its line of railroad at Wagoner 49,320 ties, but denied that it, either severally or jointly with Graham & Miller, purchased or agreed to purchase any ties from said Bagnell Timber Company, or undertook or agreed to pay said plaintiff therefor. It admitted that it had failed and refused to pay plaintiff said sum of $5,422.50 on account of said ties, and denied that there is any sum due by this defendant to plaintiff for said ties so delivered on its tracks at Wagoner, and denies that plaintiff delivered any ties to defendant under an agreement between plaintiff and defendant. It averred that Graham & Miller, in the year 1899, were tie contractors for defendant and bought ties from various persons in order to deliver them to defendant Railway Company under their contract and arrangement with plaintiff, the details of which were unknown to defendant. Other portions of the answer are deemed irrelevant to the issue and are omitted.

The evidence offered by the plaintiff on the trial of the cause, tended to prove that the ties were sold by the Bagnell Timber Company to Graham & Miller, while the evidence offered by the defendant surety company tended to prove that the ties were sold by the Bagnell Timber Company to the Railway Company and Graham & Miller.

One of the instructions given for the Bagnell Timber Company reads: "That court instructs the jury that it is admitted by the parties to this case that plaintiff delivered to the defendant Railway Company the number of ties stated in the petition, and it is admitted that the unpaid balance due to the plaintiff for such ties, on October 26, 1899, was the sum of $5,406.65; and the court instructs the jury that if they believe from all the facts and circumstances in evidence that the said railroad ties were delivered under a contract of sale made by plaintiff with the said Railway Company and Graham & Miller, or with the said Railway Company alone, and that the said unpaid balance is yet due to the plaintiff, then the verdict should be for the plaintiff and its damages should be assessed at an amount equal to said sum of $5,406.65, with interest thereon at the annual rate of six per cent,.from said October 26, 1899."

The court instructed the jury for the defendant, as follows: "If you find from the evidence that the contract for the sale of the ties, the purchase price of which is sought to be recovered in this cause, was made between the plaintiff and the co-partnership of Graham & Miller, and was a separate and sole contract with them alone, and between the plaintiff and said co-partnership alone, your verdict and finding must be for the defendant."

At the close of the testimony, the court refused a demurrer offered to the evidence by the defendant. The court gave declarations of law for the plaintiff, in substance as follows:

2. Plaintiff is not estopped to prosecute this action by the adverse judgment in the Circuit Court of Pettis County.

3. That if the court find from the evidence that plaintiff purchased ties from Graham & Miller and said Graham & Miller caused said ties to be delivered by the Bagnell Timber Company to plaintiff at Wagoner, I. T., and plaintiff paid Graham & Miller therefor according to their order and direction, that thereafter the Bagnell

Timber Company sued and recovered judgment against plaintiff in the Pettis County Circuit Court for the balance alleged to be due it from plaintiff and Graham & Miller on account of the same ties, then the finding and judgment will be for plaintiff. .

The court gave a declaration for the defendant in substance that if the court found from the evidence that the ties mentioned in the petition were not sold to plaintiff by Graham & Miller but were sold to plaintiff alone, or to plaintiff and Graham & Miller, then the judgment should be for the defendant.

It is thus seen that it was judicially determined on the trial in the Circuit Court of Pettis County that the Missouri, Kansas & Texas Railway Company did not buy the ties from Graham & Miller, but that the Bagnell Timber Company sold and delivered them to the Railway Company and Graham & Miller, and that it owed the Timber Company the balance found to be due it by said judgment.

The learned trial court overruled the defendant's demurrer to the evidence, and by its declaration of law given for the plaintiff ruled that the plaintiff was not estopped by said judgment from recovering in this action on the ground that the matters in issue were adjudicated and determined adversely to plaintiff in the Bagnell Timber Company suit, on the theory that the Railway Company and the Surety Company were not adversary parties.

It is well settled that a judgment against two or mor defendants, if there are no issues between them, does not bind them as against each other. [E. E. Souther Iron Co v. Woodrull Realty Co., 175 Mo. App. l. c. 255; Charles v. White, 214 Mo. 187, l. c. 211, and cases cited.] To illustrate: If A recover judgment against B and C on a promissory note, their liability, *inter sese,* is still an open question. If C pay the judgment, he may, in an action against B, show that B was principal and he was surety on the note and recover the whole sum paid by him in satisfaction of the judg-

ment. But in an action between themselves neither would be heard to say that the note was a forgery, or to assert that they were not concluded by the judgment on such an issue. The judgment was a final adjudication that B and C owed A the sum found due on the note. That is a closed issue.

In Herman on Estoppel, sec. 138, cited by respondent, in speaking of a judgment against adversary parties, it is said: "Thus a judgment against A and his sureties is no bar in an action between one surety and his co-sureties to recover of each his proportionate share of a judgment of amercement that had been collected of him; *while it establishes the demand,* it does not establish the liability of the sureties between themselves; that point is not before the court in the action wherein the original judgment was rendered."

Again, in McMahan v. Geiger, 73 Mo. 145, also cited by respondent, it is said: "Parties to a judgment are not bound by it, in a subsequent controversy between each other, unless they were adversary parties in the original action. If A recovers a judgment against B and C, upon a contract, which judgment is paid by B, the liability of C to B in a subsequent action for contribution is still an open question, because, as to it no issue was made or tried in the former suit. As between the several defendants therein a joint judgment establishes nothing but their joint liability to the plaintiff. Which of the defendants should pay the entire debt, or what proportion each should pay in case each is partly liable, is still unadjudicated; but a judgment against two joint debtors prevents either from denying the existence and obligation of the debt, though he may still prove by any competent evidence in his power that the whole burden of the obligation should be borne by the other."

The rule invoked, however, has no application to the case in hand. The plaintiff notified the Surety Company, an indemnitor, to defend the suit in the Pettis County Circuit Court so that it would be concluded by the judg-

ment that might be rendered therein. "Where one is bound to protect another from a liability, he is bound by the result of the litigation to which such other is a party, provided he had notice of the litigation and opportunity to control and manage it." [Strong v. Phoenix Ins. Co., 62 Mo. 289, l. c. 295.] He is just as much bound by the judgment in the cause as the real defendant in whose name the defense is made. [State ex rel. v. Stone, 269 Mo. 334, l. c. 344; Murch Bros. Constr. Co. v. Fidelity and Cas. Co., 190 Mo. App. 515.] The judgment is also conclusive upon the Railway Company as to the facts therein determined.

Was the failure of the Surety Company to pay the judgment in favor of the Bagnell Timber Company a breach of the conditions of the bond? To justify a recovery on the bond it must be shown that the damage or injury alleged is such as fairly falls within the terms of the contract. [22 Cyc. 86, par. 4.]

In Utterson v. Elmore, 154 Mo. App. 646, l. c. 651, the court said. "The bond in this case does not provide for the completion of the contract by the contractors in all its details. It simply provides for the completion of the contract 'by completing the building as described by the plans and specifications.' It must be accepted as the settled law of this State, that there is no implied obligation on the part of a surety that he has undertaken more or other than that expressed in his contract, and it is only to the extent and in the manner and under the circumstances pointed out in his bond, is he bound. [Bauer v. Cabanne, 105 Mo. 110, 16 S. W. 521; Nofsinger v. Hartnett, 84 Mo. 549.; Reissaus v. Whites, supra; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620; School Dist. v. Green, 134 Mo. App. 421, 114 S. W. 578.]"

The rule is stated in 22 Cyc. 84 B: "In construing contracts of indemnity, the ordinary rules of construction employed in the interpretation of contracts generally are applicable. Indemnity contracts, like other contracts, are to be so expounded as to effectuate the intention of the parties. . . . Where a doubt arises

from any ambiguity or obscurity in the language, the court will incline against the party whose words are the matter to be construed.''

Heman Constr. Co. v. St. Louis, 256 Mo. 332, l. c. 338, was an action on a contract of indemnity. On page 229, this court said: ''The contract in this case ought to be construed according to the ordinary and usual import of the language in which it is expressed.''

In Moore v. Title Guaranty & Trust Co., 151 Mo. App. 256, the condition of the appeal bond was that the appellant would prosecute his appeal to a decision in the Supreme Court and perform such judgment as shall be given by the said Supreme Court, etc. The cause was transferred to the Kansas City Court of Appeals. The judgment was affirmed by that court and the surety company refused to pay. In a suit upon the appeal bond, JOHNSON, J., said: ''The rule is firmly fixed that a surety has the right to stand on the letter of his bond and that his obligations will not be enlarged by implication. The letter of the bond before us restricted the liability of defendant to responding to the judgment of the Supreme Court and we could not enlarge that liability without doing violence to the terms of the contract of suretyship.''

In American Bonding Company v. Pueblo Inv. Co., 150 Fed. l. c. 24, SANBORN, J., held that a surety is never liable beyond the strict terms of his contract. His obligation may not be extended by construction or by implication.

By referring to the conditions of the bond, it is seen that the liability against which the Surety Company undertook to protect and indemnify the Railway Company was solely in connection with ties *furnished by Graham & Miller to the Railway Company.* Has the plaintiff suffered loss or damage on account of any ties or lumber furnished it by Graham & Miller? It is averred in the amended petition for breaches of the bond, that between April 28 and August 1, 1899, Graham & Miller furnished and delivered to the Railway Company 49,320 ties; that after plaintiff paid them in full therefor,

the Bagnell Timber Company sued plaintiff and Graham & Miller, claiming there was $5,422.50 due to it from the defendants in that action on account of certain of the ties *so furnished by the said Graham & Miller to plaintiff* and paid for by plaintiff and for which it prayed judgment.

The sole issue on the trial of the Bagnell Timber Company case, as appears from the pleadings and the instructions given by the court, was whether the Bagnell Timber Company sold the ties to the Railway Company and Graham & Miller, as was contended by the plaintiff therein, or whether Graham & Miller sold them to the Railway Company, as was contended by the Railway Company. That was the sole issue also on the trial of this cause, as appears by the pleadings and declarations of law given by the court. That was the theory on which the case was tried in the court below. It must be tried here on this appeal on the same theory. It was not tried on the theory that Graham & Miller had bought the ties from the Bagnell Timber Company as plaintiff's agents and that plaintiff became bound thereby to pay for them, or that, after receiving the money from plaintiff to pay for them, they had embezzled the money or had defaulted and had thus breached the bond.

It conclusively appears by the judgment in the Pettis County Circuit Court that the ties were sold by the Bagnell Timber Company to the Railway Company and Graham & Miller, and that in paying the judgment the Railway Company paid its own debt. That finding is fatal to a recovery in this action against the indemnitor. [22 Cyc. 107.] It follows that there was an entire failure of proof on the issues presented by the pleadings. The failure of the Surety Company to pay that judgment is not a breach of any condition of the bond, express or implied, unless its obligations be extended by construction or by implication. This we cannot do without doing violence to the terms of the contract of suretyship.

It follows that, in my opinion, the learned trial court erred in overruling the evidence. I dissent from the majority opinion.