(21 Misc. Rep. 609.).
## CONNELL v. STALKER.

(Supreme Court, Appellate Term.   November 24, 1897.)

1. ASSOCIATIONS—SUSPENSION OF MEMBERS.
    Plaintiff, while treasurer of defendant association, refused to surrender his books to a special committee appointed to investigate a certain bill or account.   Thereupon the association, at a regular meeting, adopted a motion that the members refuse to work with him, and he was afterwards suspended, in consequence of which he was discharged from employment as stonecutter, and prevented for nine weeks from getting work. . Defendant's by-laws provided that the treasurer should deliver up, "when legally called upon," all books, etc., of the association, to the trustees to be audited, and also for turning over to his successor.   Special committees were provided by the by-laws, but their duties were not prescribed.   The constitution and by-laws contained no provision for suspension except in the case of a member working in a "scab" shop, or the violation in an aggravated manner of the constitution or by-laws.   *Held*, that the action of the association was not warranted by the constitution or by-laws.

2. SAME—VIOLATION OF BY-LAW.
    Where the by-laws of an association provide for the suspension of a member for a violation thereof "in an aggravated manner," and also prescribe a formal manner in which they may be amended, a suspension cannot be justified by showing a violation of a mere custom.

3. SAME—ACTION FOR WRONGFUL SUSPENSION—RELEASE.
    An association was sued by a member for wages lost through his unauthorized suspension from membership.   Defendant alleged that it had reinstated him in consideration of his promise to discontinue all legal proceedings, and the present action in particular, but it was not averred that he released his claim for past damages.   *Held* that, as the association only did its duty in reinstating him, the stipulation could not be enforced by way of estoppel.

4. SAME—RIGHTS OF MEMBERS.
    Where an association suspends a member without authority, and prevents him from securing any work in the city where he resides, he is under no obligation to it to accept employment outside of the city.

5. DISCONTINUANCE—PAROL STIPULATION.
    Under Court Rule 11, a parol stipulation to discontinue an action is void.

Appeal from city court of New York, general term.

Action by Joseph Connell against William Stalker, president of the Journeymen Stonecutters' Association of New York, Jersey City, East Chester, and vicinity.   Plaintiff had judgment for $405.96, which was affirmed by the general term of the city court (45 N. Y. Supp. 1048), and defendant appeals.   Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Holden & Allen, for appellant.

Alfred & Charles Steckler, for respondent.

DALY, P. J.   The plaintiff obtained a verdict against the Journeymen Stonecutters' Association, unincorporated, of which he is a member, for $243, a sum agreed to be the regular wages of a stone-

cutter for nine weeks, the period for which he was deprived of work on account of the action of the association against him. The defense to the action was that while treasurer of the association he refused to surrender his books and papers to a special committee appointed to investigate a certain bill or account. The plaintiff claims that under the by-laws he was required only to surrender his books and papers to the trustees to be audited or to be delivered to his successor. It was proved that, on the plaintiff's refusal to turn over his books to the special committee, the association, at a regular meeting, adopted a motion that the members refuse to work with him, and that in pursuance thereof, when plaintiff went to work the next day at St. Luke's Hospital, where he was employed with the members of the association, they were immediately called out by the walking delegate, and the plaintiff had to be discharged from that employment in order to induce them to resume work; also that for nine weeks he was similarly excluded from working in the city of New York, as all the stonecutters there were union men.

It sufficiently appears that by the action of the association in adopting the motion in question the plaintiff was, in effect, suspended from his rights as a member, and the question for the trial court to decide was whether such action was within any power conferred by the constitution and by-laws, which formed the contract between the parties. White v. Brownell, 4 Abb. Prac. (N. S.) 162. The only authority contained in the constitution or by-laws for suspending a member appears to be that conferred by article 12 of the by-laws, which reads as follows:

"Any member who will, at any time, work in any place styled by this association a scab shop, or violate this constitution and by-laws in any aggravated manner, shall be denounced by us as a scab, and shall forfeit all claim to this association as a member; and, before being admitted again as a member, he shall pay a reinitiation fee not exceeding $80.00, and not less than $20.00, to be paid at the rate of not less than $5.00 a month, no part of the fine imposed to be remitted."

It does not appear that in refusing to surrender his books to the special committee the plaintiff violated any provision of the constitution or by-laws. In the by-law concerning the duties of officers it is provided that the treasurer "shall deliver up, when legally called upon, all moneys, bonds, papers, books," etc., "belonging to the association, to the trustees, who shall have them audited by a public accountant every four months, and also previous to his successor in office receiving them." Special committees are provided for by the by-laws, but their powers and duties are not prescribed. It was not shown what power was conferred upon the special committee in question. So far as the written constitution and by-laws show, it would appear that the treasurer might lawfully retain in his possession the books and papers until required, as above provided, to deliver them to the trustees for auditing, or to be turned over to his successor in office. It would seem, therefore, that the action of the society in suspending the plaintiff from his rights of membership for failure to comply with its direction was not warranted by

anything in the written constitution or by-laws, which constitute his contract with the association.

An attempt was made by the defendant to show a custom of the association by which it had the power, for the purpose of carrying on its investigations, of demanding the property of the association which plaintiff had in his possession. This proof was excluded, and the exceptions taken to the ruling of the court constitute the principal ground of appeal. It would seem that a custom should not override the express provision of the by-laws prescribing when and to whom such property must be surrendered, and that, if the association were accustomed to require the treasurer to do otherwise than as prescribed by the by-laws, his refusal to comply should not subject him to the same punishment as a violation of the by-laws themselves. The custom of special committees to require the books of the treasurer in pursuance of their investigation, and the custom of the treasurer to comply with such requisition, would not tend to show the adoption by the association of a new by-law on the subject. While it is true that the existence of a by-law may be established by custom or usage of a society, it appears that this association had prescribed the manner in which its by-laws might be amended, namely, at a regular meeting, after having been presented in writing two weeks previously, and by a vote of two-thirds of the members. It would seem that, where a member is to be subjected to the severe punishment prescribed for a violation of the by-laws "in any aggravated manner," it is not too much to hold that the by-law should be established in the manner pointed out by the instrument by which the association is governed. The appellant did not on the trial offer to prove the adoption of any new by-law, even by the offered proof of custom.

A further defense to the action was set up by supplemental answer, namely, that the plaintiff had, in consideration of defendant's agreement to restore him to his rights as a member, agreed—

"With certain members and representatives of the association defendant * * * to drop or discontinue all legal proceedings which he had instituted or prosecuted on account of the alleged cause of action set forth in the complaint of this action, and in particular that he would drop and discontinue this action, and that he authorized the said members and representatives to state this to the organization, and to advise his reinstatement on those terms, and that thereafter the members and representatives of the association defendant did state the said proposal to the members of the said association at a regular meeting, and on those terms and in consideration of the promises of the plaintiff a certain motion was passed by the meeting by which the plaintiff herein was duly reinstated as a member of the association defendant in good and regular standing, so that the members of the said association no longer refused to work with the said plaintiff, and the said agreement was in all other respects carried out and fulfilled by the said association."

The alleged facts constitute no defense. It is not averred that the plaintiff released or agreed to release his claim for past damages. As to the agreement to discontinue the action, it appeared by the proof offered under the defense that such agreement was verbal. No stipulation for a discontinuance of the action, made out of court between the parties, would be effectual unless evidenced by writing, as required by the rules of court. Rule 11. This is not a case where

such a verbal stipulation would be enforced by way of estoppel, as where the defendant relies upon it to his disadvantage. The suspension of the plaintiff being unlawful, it was the duty of the defendant to reinstate him, and its doing so resulted in no disadvantage to it. The defendant attempted to show that the plaintiff, though deprived of work in New York, could have obtained employment in Brooklyn, and excepted to the exclusion of evidence to that effect, and also to the charge of the trial judge that plaintiff was not bound to go outside of the city of New York for work. In what respect this was error is not pointed out. Defendant had no right to force the plaintiff to leave his place of residence in order to support himself. He had the right to live and work where he chose. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.