# JANUARY, 1947

INTERNATIONAL PRINTING PRESSMEN AND ASSISTANT'S UNION
OF NORTH AMERICA V. L. R. SMITH.

No. A-778. Decided July 17, 1946.
Rehearing overruled January 8, 1947.
(198 S. W., 2d Series, 729.)

*White & Forsythe,* of Dallas, for petitioner.

It was error for the Court of Civil Appeals to hold that the National Union was liable in damages for the acts of a local union, when the local union has not adopted or ratified the action of the executive committee thereof in expelling a member, and the secretary has refused to issue a membership card to such member, and the member has not pursued his right to appeal to the national union as prescribed in its by-laws. Said court also erred in holding that the action grew out of a breach of contract and did not sound in tort and was not barred by the statute of limitation. St. Louis, S. W. Ry. Co. v. Thompson, 102 Texas 89, 113 S. W. 144; Cotton Jammers' & Longshoremens' Assn. No. 2 v. Taylor; 56 S. W. 553; Dallas Photo Engravers Union No. 38, v. Lemmon, 148 S. W. (2d) 954; Cowart v. Russell, 135 Texas 562, 144 S. W. (2d) 249; Jordan v. Concho Theatres, 160 S. W. (2d) 275.

*Henry Klepak,* of Dallas, for respondent.

The petitioner in this case being the national union of which

the local union is the agent is liable for the acts of its servant, agent and employee in its dealings with the respondent and that said petition labor union is also liable in damages for the wrongful acts of the secretary of said union, and the Court of Civil Appeals was correct in so holding. It was also correct in holding that respondent's cause of action arose of a breach of contract and not of tort. Clarkson v. Laiblan, 202 Mo. App. 682, 216 S. W. 1029; Jones v. Supreme Lodge Knights of Honor, 236 Ill. 113, 86 N. E. 191; Honor v. Dinger, 221 Ill. 176, 77 N. E. 557; Arnold v. Jones, 26 Texas 335, 82 Am. Dec. 617; McLean v. Morrow, 137 S. W. (2d) 113.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

L. R. Smith brought this suit against the International Printing Pressmen and Assistants' Union of North America for damages for wrongful expulsion from the union. The verdict of the jury was in favor of the plaintiff for actual damages, but against him for exemplary damages. However, the trial court, on motion, entered judgment non obstante veredicto for defendant. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause with instructions to enter judgment for the plaintiff on the verdict, and to proceed thereafter as though the judgment non obstante veredicto had not been entered. 190 S. W. (2d) 769.

The International Printing Pressmen and Assistants' Union of North America is a voluntary labor union. It operates largely through subordinate unions chartered by it. The Fort Worth Printing Pressmen and Assistants' Union No. 47 is one of its chartered subordinate unions. The plaintiff, Smith, was a member of this subordinate union in good standing, and had been a member thereof for more than ten years. The international union's constitution provided that charges against any member of a subordinate union must be presented to the subordinate union in writing, giving the name of the alleged offender, the time, place, and specifications of the offense, and the names of the witnesses; and upon presentation thereof the subordinate union was required to commit the same to trial before a trial committee of five members. The trial committee was required to set a date for the hearing and give the accused five days' notice thereof, and then proceed to hear the case and report is findings in writing to the subordinate union at its next regular meeting. Upon receipt of the report of the trial committee, the subordinate union was required to vote on the question of sustaining the re-

port of the committee as to the guilt or innocence of the accused; and if the accused was found guilty, it was required to vote on the punishment to be imposed. The constitution set out in detail how the vote should be taken.

On or about June 26, 1940, a member of the executive board of the subordinate union verbally notified Smith that he had been charged with slandering the union and that a hearing would be had the following evening at 5:30. Apparently no written charges had been filed, and according to the findings of the jury he was given only one day's notice prior to the hearing. He failed to appear at the trial, and the trial proceeded in his absence. Thereafter the trial committee made its report to the subordinate union as follows:

"June 27th, 1940. To: Members of Local No. 47: We, the members of the Executive Board, have found Brother L. R. Smith guilty of an unbecoming Union Member. The charges are as follows: On June 20th, 1940, Brother L. R. Smith goes to Business Manager of the Fort Worth Press and in a slanderous way, makes charges to said Business Manager that is injurious to the Union. The Executive Board has found this to be true, and said Executive Board recommends that this Local No. 47 suspend Brother L. R. Smith for a period of thirty (30) days, beginning June 25th, 1940, and assesses a fine of $25.00 with this condition; that if Brother L. R. Smith should take a traveler out of Local No. 47, that the $25.00 shall be suspended until L. R. Smith's traveler is again deposited in Local No. 47. Then said fine shall be collected at the time Brother L. R. Smith's traveler is deposited." (Signed Executive Board.)

Both parties concede that the subordinate union never took a vote on the recommendations of the trial committee or executive board, but the subordinate union thereafter treated Smith as a suspended and fined member. The subordinate union had a contract with the Fort Worth Press and furnished the labor for its printing, and Smith was one of the employees on that job. After the trial committee had filed its report, the foreman of the Fort Worth Press (a member of the union), where Smith worked, notified him that he had been fined and suspended, and that he could no longer hold his job. The manager of the Fort Worth Press also notified him that because of the contract with the union and his suspension from the union, he could no longer work on the job.

From time to time Smith went before the local union and

tried to get the matter disposed of, but was never able to get any definite action thereon. This situation continued until August 15, 1940, when Smith tendered to the subordinate union all dues owed by him at that time and requested the issuance of a membership or union card. The secretary of the subordinate union refused to issue the card unless Smith would pay the $25.00 fine and 25c per day during the period of his suspension, both of which he refused to pay. The result was that the union deprived him of membership therein, including all of the rights, benefits, and privileges incident thereto. Continuously since then it has denied him the right to work on a union job. Although he is an experienced pressman, he has been unable to secure a job as such. He has been able to secure only nonunion jobs here and there, and at the time of the trial was serving as a night watchman for a mercantile establishment at small pay. Other pertinent facts will be stated in connection with the various points discussed in the opinion.

The constitution of the international union provided for an appeal by the aggrieved member successively to the president, the board of directors, and thence to the next convention of the international union. It forbade resort to the courts until the right of appeal had been exhausted. It is contended that Smith had no right to maintain this action for damages until he had first exhausted his remedy of appeal within the union.

■■ We think it clear that Smith's expulsion from the union was illegal and void, and that the act of the secretary of the local union was wholly unauthorized. The charges against Smith were not in writing as required by the constitution. He was given only one day's notice prior to the trial, whereas the constitution required five days' notice, and the trial proceeded in his absence without the necessary notice. The constitution required the union to vote on the question of sustaining the report of the trial committee as to the guilt of the accused and the punishment to be imposed. No such action was ever taken by the union. There was therefore such a breach of the fundamental guarantees established by the union for the protection of the rights of the individual member as to render the purported expulsion illegal. United Brotherhood of Carpenters, etc. v. Carpenters' Local No. 14, etc. (Civ. App.), 178 S. W. (2d) 558; McCantz v. Brotherhood of Painters, etc. (Civ. App.), 13 S. W. (2d) 902; Cotton Jammers', etc. Assn. v. Taylor, 23 Texas Civ. App., 367, 56 S. W. 553; People ex rel. Deverell v. Musical Mutual Protective Union, 118 N. Y. 101, 23 N. E. 129; Nissen v. Inter-

national Brotherhood of Teamsters, 229 Ia. 1028,. 295 N. W. 858, 141 A. L. R. 598; Grant Int. Brotherhood of Locomotive Engineers v. Green, 210 Ala. 496, 98 So. 569; Johnson v. International of the United Brotherhood of Carpenters, etc., 52 Nev. 400, 288 Pac. 170. See also "the Elements of a Fair Trial in Disciplinary Proceedings by Labor Unions," 30 Col. L. Rev. 847, and "The Judicial Process in Labor Unions," 10 Brooklyn L. Rev. 145. It is apparent that no lawful fine was ever assessed against Smith, and therefore the secretary had no authority to deny him the right to pay his regular dues and receive his union card. Neither did the union have a right to deny him the privileges of the union.

■ It has been definitely settled by the decisions of this State that an action of this kind for damages for wrongfully depriving a plaintiff of his rights as a member of a union, where the attempted expulsion was void or illegal, may be maintained without first exhausting the remedy of appeal within the union. St. Louis Southwestern Ry. Co. of Texas v. Thompson, 102 Texas 89, 113 S. W. 144, 19 Anno. Cas. 1250; Benson v. Screwmen's Benefit Assn., 2 Texas Civ. App. 66, 21 S. W. 562; McCantz v. Brotherhood of Painters, etc. (Civ. App.), 13 S. W. (2d) 902. See also 31 Amer. Jur. 865, sec. 71; Independent Order of Sons and Daughters, etc. v. Wilkes, 98 Miss. 179, 53 So. 493, 52 L. R. A. (N. S.) 817; Local Union No. 65 of Amalgamated Sheet Metal Workers, etc. v. Nalty, 7 Fed. (2d) 100; Shapiro v. Gehlman, 224 App. Div. (N. Y.), 238, 278 N. Y. S. 785, modified and affirmed (Shapiro v. Brennan) 269 N. Y. 517, 199 N. E. 515. This assignment is therefore overruled.

The major contention is that the international union is not responsible for the acts of the subordinate union in expelling Smith, nor for that of the secretary of the subordinate union in refusing to recognize Smith as a member and to issue him a membership card.

■ As previously stated, the international union operates largely through subordinate unions chartered by it. The Fort Worth local union was one of its subordinates. Under the laws of the international union, all subordinate unions are required to obey the directions of the international union. The constitution of the international union, which is in evidence, provides that it "shall be known as the International Printing Pressmen and Assistans' Union of North America, and it shall be acknowledged, obeyed and respected as such by all subordinate unions within its juris-

diction." Its jurisdiction embraces the entire continent of North America, and its constitution provides "and in it alone is vested the power to charter, regulate and control subordinate unions of printing pressmen, offset pressmen, assistants, paper handlers, rollermakers, newsboys, carriers and such other organizations not chartered by any other international union." While a local union may elect its own officers and adopt a constitution and by-laws, the constitution and by-laws of the international union take precedence over all local regulations. The laws of the international union regulate in detail the manner in which a local union may be operated and the duties to be performed by its officers; and they provide that the international union may forfeit the charter of the local union and take over the administration of its affairs for a violation of such laws and remove and expel its officers for a failure to perform their duties. The local union and its officers are used as the medium through which the international union performs its functions and collects the revenues upon which it subsists. The secretary of the local union is required to collect and remit to the international union the regular dues as well as all special assessments levied upon the members. The international union prescribes in detail the amounts of these dues, the purposes for which they may be collected, and the manner of their collection and remission to the international union. The laws of the international union provide the mode of trial to be followed, and the manner in which a member may be fined, suspended, or expelled. A report of all suspensions and expulsions must be made by the secretary of the local union to the international union. The international union prescribes in detail the form of the membership card to be issued and the circumstances under which the secretary of the local union may issue it, and requires that one copy of each application for membership be sent to the international union. It prescribes the circumstances under which members may be suspended or expelled, and requires the secretary of the local union to make a monthly report of all such suspensions, as well as a report of those in good standing from whom dues are being collected, and reserves the right to discharge the secretary and to expel him from the union for a failure to perform his duties. It requires the secretary of the local union to have his books audited once each year and to furnish a copy of such audit to the international union. The international union may suspend a member or cancel his card or cause the local union to do so for a violation of its laws, and it prescribes the form of the application and the procedure to be followed for the reinstatement of

an expelled member. It forbids a suspended or expelled member to work on a union job.

■ From the above facts, we think it is clear that the local union and its secretary were the agents and representatives of the international union, and that they were acting within the scope of the authority conferred upon them in the attempt to expel Smith from the union and in refusing to recognize him as a member thereof. The local union was but the *alter ego* of the national organization. It was the creature of the international organization, fashioned by it for the doing of the very things it was attempting to do when it undertook to discipline Smith, and the secretary thereof was the agent who was authorized to issue union cards to those who were in good standing and entitled to the privileges of the union. And it was his duty to refuse to issue cards to those not in good standing. The international union controlled the local union and its officers in the manner of the performance of their duties. Both the local union and the secretary thereof were acting within the scope of their authority in the matters here under consideration.

■ It is generally held that a parent organization, such as the international union here under consideration, is liable for the wrongful acts of one of its local organizations and its officers done in the line and scope of their duties as agents of the parent organization. Great International Brotherhood of Locomotive Engineers v. Green, 210 Ala. 496, 98 So. 569; National Order of Mosaic Templars v. Bell, 21 Ala. App. 401, 108 So. 636; Mitchell v. Leech, 69 S. C. 413, 48 S. E. 290, 66 L. R. A. 723; Supreme Lodge of the World, Loyal Order of Moose v. Kenney, 198 Ala. 332, 73 So. 519, cert. den. 244 U. S. 652, 61 L. Ed. 1372, 37 S. Ct. 650, L. R. A. 1917C, 469; Supreme Lodge, Knights of Pythias v. Withers, 177 U. S. 260, 20 S. Ct. 611, 44 L. Ed. 762; Calhoun v. The Maccabees (Com. App.), 241 S. W. 101; Murphy v. Independent Order of the Sons & Daughters of Jacob, 77 Miss. 830, 27 So. 624, 50 L. R. A. 111; Knights of Pythias v. Bridges (Civ. App.), 39 S. W. 333; Order of Columbus v. Fuqua (Civ. App.), 60 S. W. 1020.

It is true the trial court found in its judgment that there was no showing that the subordinate union was the agent or representative of the international union, but we think this was established conclusively by the constitution and by-laws of the parent organization. It is also true the jury failed to find that the local union acted on instructions from the international organization. But this is not material. Under the above authorities,

since the subordinate union and its secretary were the agents of the international union, acting within the scope of their authority, the international union is responsible for their wrongful conduct, even though the international union had no actual knowledge of their actions and did not direct them in the performance thereof. See also Clarkson v. Laiblan, 202 Mo. App. 682, 216 S. W. 1029.

Under the rule above announced, the international union is liable for the conduct of the subordinate union and its officers in line of their duty, even though the international union did not thereafter ratify such acts. But if ratification is necessary, it is not wanting in this case. In June, 1943, Smith wrote to the president of the international union and reported the facts to him and requested relief. In reply the president wrote Smith on July 26, 1943, as follows:

"Dear Sir and Brother:

"I have before me a report from the president of Fort Worth Printing Pressmen and Assistants' Union No. 47, who has transmitted to me a synopsis of the records in your case, and I regret very much that I do not find sufficient justification to consider the matter further and, therefore, I refer you to the conclusions of this office set forth in my communication to you dated July 2, 1943."

Under facts almost identical with these, this Court sustained a judgment in favor of an expelled member against the international union. St. Louis & Southwestern Ry. Co. of Texas v. Thompson, 102 Texas 89, 113 S. W. 144, 19 Anno. Cas. 1250. See also McCantz v. Brotherhood of Painters, etc., 13 S. W. (2d) 902.

We therefore hold that the international union is liable in damages for the wrongful expulsion of Smith from the union.

The trial judge was induced to enter judgment non obstante veredicto in favor of the defendant because he was of the opinion that the cause of action was barred by limitation. The overt act of the secretary of the subordinate union in refusing to issue a card to Smith and to recognize him as a member of the union, occurred on October 15, 1940, more than two years, but less than four years, prior to the filing of the suit on September 11, 1943. It is necessary therefore for us to determine whether or not this is an action in tort, which is barred in two years (Rev. Stats. Art. 5526), or an action founded upon a contract in writing, which is barred in four years. Rev. Stats. Art. 5527.

■ It is said that "while the distinction between actions in contract and in tort is clearly defined and well understood, it is often difficult to determine whether a particular action is one or the other." 1 C. J. S. 1098. There is no universally accurate acceptable definition of either class. 1 Amer. Jur. 441; 21 Tex. Law Rev. 697. However, generally speaking, "actions in contract and actions in tort are to be distinguished in that an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law." 1 C. J. S. 1098. It is sometimes said that "if the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is, in substance, an action on the contract, whatever may be the form of the pleading." 1 Amer. Jur. 442.

The difficulty in determining whether the action is in tort or in contract is in the application of the rule. In strictly negligence cases no difficulty is encountered, for there the cause of action arises purely from a violation of the duty imposed by law to exercise ordinary care to avoid injuring another. In actions against public service corporations for injury to persons or damages to property, where there is a contract between the parties and also a duty imposed by law, but the gravamen of the action is the negligence of the defendant, it is sometimes said that the contract serves merely as an inducement to the action or as a foundation for the plaintiff's right to enjoy the benefits of the duty imposed by law. And in such cases the action is said to be one in tort, and not in contract. 28 Tex. Jur. 127; 41 Tex. Jur. 365; Gulf, C. & S. F. Ry. Co. v. Levy, 59 Tex. 542, 548, 56 Amer. Rep. 269; Shirley v. Waco Tap Ry. Co., 78 Texas 131, 10 S. W. 543. In other instances in actions against public service corporations, where the duty is imposed by law and is also provided for by contract, it has been held that the action may be both in contract and in tort, having regard to the most complete and ample redress which, upon the facts stated, the law can afford. Gulf, C. & S. F. Ry. Co. v. Levy, supra; Stuart v. Western Union Tel. Co., 66 Texas 580, 18 S. W. 351, 59 Amer. Rep. 623; Southwestern Gas & Electric Co. v. Stanley, 123 Texas 157, 70. S. W. (2d) 413, 415. Of course, in cases where the duty imposed upon the defendant arises purely by virtue of a contract, the action for breach must necessarily be in contract. Galveston, H. & S. A. Ry. Co. v. Hennigan (Civ. App.), 76 S. W. 452; Jones v. Hunt, 74 Texas, 657, 12 S. W. 832. See also 1 Tex. Jur. 616.

■ In the case at bar the plaintiff, upon becoming a member of

the union, was required to sign a pledge to support the constitution and by-laws published by the international union. It is generally held that the constitution and by-laws of an organization, such as this, constitute a contract between the organization and its members. 16 R. C. L. 422; 31 Amer. Jur. 856; 63 C. J. 662; Electrical Contractors Assn., etc. v. A. S. Schulman Elec Co., 391 Ill. 333, 63 N. E. (2d) 392; Polin v. Kaplan, 257 N. Y. 277, 177 N. E. 833; Jones v. Supreme Lodge, Knights of Honor, 26 Ill. 113, 86 N. E. 191, 127 Amer. St. Rep. 277. This contract, at least by implication, pledged the union to recognize Smith as a member thereof and to allow him all of the benefits incident thereto upon compliance with the terms of the contract. He complied with the contract, but the union breached it. His action is for damages for the failure of the union to do the things expressly or impliedly imposed upon it by the contract. All the rights for which he seeks redress arose by virtue of the agreement of the parties. Smith's action was therefore founded upon a contract in writing.

The fact that Smith claimed exemplary damages would not prevent him from including in the same suit an action for actual damages for breach of the contract. In the case of Shirley v. Waco Tap Ry. Co., 78 Texas 131, 144, 10 S. W. 543, it was held that a plaintiff could sue for actual damages for breach of a contract and in the same action seek recovery in tort for exemplary damages. See also 1 Tex. Jur. 618. In the case at bar no recovery was allowed for exemplary damages, and therefore we are not concerned with that phase of the case.

■ ■ It is further contended that even though the constitution and by-laws constitute a written contract between the parties, and the suit is upon the contract and not in tort, the constitution and by-laws do not contain any promise to do the things for the nonperformance of which this suit was brought, and therefore the suit is not one "for debt where the indebtedness is evidenced by or founded upon any contract in writing," as provided for in our four years' statute of limitation, Article 5527. It has been held in this State that "in order for an action to be one for an indebtedness evidenced by or founded upon a contract in writing, as referred to in the above-quoted statute * * * the written instrument relied upon must itself contain a contract to do the things for the nonperformance of which the action is brought." Shaw v. Bush (Civ. App.), 61 S. W. 562, 528 (writ refused); Cowart v. Russell, 135 Texas, 562, 144 S. W. (2d) 249; Hatcher v. State, 125 Texas 84, 81 S. W. (2d) 499. However, it is not indispensable that the written instrument relied upon contain

an express promise to do the things for the nonperformance of which the action is brought. It is sufficient if the obligation or liability grows out of a written instrument, not remotely but immediately, or if the written instrument acknowledges a state of facts from which, by fair implication, the obligation or liability arises. And while parol evidence is not admissible to establish the promise, it is admissible to show performance on the part of the plaintiff and a breach on the part of the defendant.

A similar statute in Missouri required "an action upon any writing, whether sealed or unsealed, for the payment of money or property" to be brought within ten years. In construing that statute it was said:

"The broad and comprehensive language of the statute evidently embraces all kinds of written instruments, without regard to their mere form or phraseology, which imply a promise or agreement to pay money, and is not restricted to such as have the requisites of promissory notes, or to such instruments as contain an express promise or agreement upon their face to pay. It is sufficient if the words import a promise or agreement, or that this can be inferred from the terms employed." Reyburn v. Casey, 29 Mo. 129.

In the case of Missouri, K. & T. Ry. Co. v. American Surety Co., 291 Mo. 92, 236 S. W. 657, par. 10, it is said:

"The instrument sued on is held to be within the statute when it provides, in express terms or by fair implication, for the payment of money or property, and this rule is held to apply although the plaintiff may, to make out his case, be required to go beyond the terms of the writing to show performance on the part of the plaintiff and a breach on the part of the defendant. Knisely v. Leathe, 256 Mo. loc. cit. 360, 166 S. W. 257; Curtis v. Sexton, 201 Mo. loc. cit. 230, 100 S. W. 17."

The above rule is amplified in Quint v. Kingsbury (Mo. App.), 289 S. W. 667, 668, par. 1. See also 37 Cor. Jur. 756; 34 Amer. Jur. 71; Annotation, 111 A. L. R. 984.

In the case of Bracklein v. Realty Insurance Co., 95 Utah 490, 80 Pac. (2d) 471, 476, it is said:

"The expressions 'founded upon an instrument in writing' and 'not founded upon an instrument in writing' are the same in meaning as though the word 'founded' were omitted from the

statute entirely. Chipman v. Morrill, 20 Cal. 130, 131, 7 Pac. St. Rep. 130—that 'a cause of action is "founded upon an instrument of writing" when the contract, obligation, or liability *grows out of written instruments*, not remotely or ultimately, but immediately.' O'Brien v. King, 174 Cal. 769, 164 P. 631, 632; Chipman v. Morrill, supra; Ashley v. Vischer, 24 Cal. 322, 85 Am. Dec. 65, 8 Pac. St. Rep. 322; Louvall v. Gridley, 70 Cal. 507, 11 P. 777; Scrivner v. Woodward, 139 Cal. 314, 73 P. 863; that if the fact of liability arises or is assumed or imposed from the instrument itself, or its recitals, the liability is founded upon an instrument in writing. If the instrument acknowledges or states a fact from which the law implies an obligation to pay, such obligation is founded upon a written instrument within the statute. If the writing upon its face shows a liability to pay, such liability is on a written instrument within the statute of limitation. So, also, is an action in which the instrument in writng itself contains the contract or promise to pay or do the thing, to compel the doing of which the action is brought. The promise must arise directly from the writing itself and be included in its terms. An obligation being established by a writing, a promise to pay or to perform is implied. By necessary inference of law and fact such promise is embodied in the language of the writing although it may not be expressed in words."

This Court in the case of Robinson v. Varnell, 16 Texas 382, 390, held that the words "action for debt," as used in the statute, included suits brought to recover money for the breach of contract without regard for the technical distinction between debts and damage (see also Elder, Dempster Co. v. St. Louis & Southwestern Ry. Co. of Texas 105 Texas 628, 154 S. W. 975).; and in the case of Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co., 121 Texas 594, 51 S. W. (2d) 284, par. 2, it was held that "such term should not be given a strict, literal interpretation, but on the other hand should be given such a reasonable interpretation as would give it effect according to the spirit and intention of the statute." See also 28 Tex. Jur. 110

In the case of Texas Pacific Coal & Oil Co. v. Stuard (Civ. App.), 7 S. W. (2d) 878, par. 16 (writ refused), it was held that an implied covenant in an oil and gas lease to develop was part of the written contract and governed by the four years' statute of limitation. See also 31 Tex. Jur. 868; Sublett Admr. v. McKinney, 19 Texas 439; Fox. v. Kroeger, 119 Texas 511, 35 S. W. (2d) 679; Laredo Electric Light & M. Co. v. United States Electric Lighting Co., 26 S. W. 310.

■ While the constitution and by-laws of the international union did not contain any express promise to allow members of the union to remain members thereof and to enjoy the benefits incident thereto, we think this is the necessary implication. The very purpose in joining the union and paying the dues is the privilege of enjoying the benefits incident to membership in the union. If it had been intended that the union could withdraw from the contract and exclude the members at will, there would have been no necessity for providing in detail the steps to be taken in order to exclude a member from the union. We think the contract implies an obligation to allow a member to remain a member of the union and to enjoy the benefits thereof so long as he complies with the obligations imposed by the constitution and by-laws.

Smith was not required to pay the purported fine, unlawfully demanded of him, in order to mitigate the damages. Southwestern Gas & Electric Co. v. Stanley, 45 S. W. (2d) 671, affirmed 123 Texas 157, 70 S. W. (2d) 413; Galveston, H. & S. A. Ry. Co. v. Zantzinger, 92 Texas 365, 48 S. W. 563; Connell v. Stalker, 48 N. Y. S. 77; Local Union No. 65, American Sheet Metal Workers v. Nalty, 7 Fed. (2d) 100.

From what has been said it is apparent we are of the opinion that the trial court erred in entering judgment non obstante veredicto for the defendant. The Court of Civil Appeals properly reversed the judgment of the trial court. However, the Court of Civil Appeals remanded the cause with instructions to enter judgment for the plaintiff on the verdict, and to proceed thereafter as though judgment had not been entered for the defendant. In so doing the Court of Civil Appeals followed the practice approved in McAfee v. Travis Gas Corp., 137 Texas 314, 153 S. W. (2d) 442, par. 22, and Universal Life and Accident Insurance Co. v. Shaw, 139 Texas 434, 163 S. W. (2d) 376, par. 6. It will be noted, however, that both of the above cases arose prior to the adoption of Rule 324; and that fact was pointed out in the Shaw case. Rule 324, T. R. C. P., now provides in part as follows: "Provided, however, that when the judgment is rendered non obstante veredicto, or notwithstanding the jury finding on one or more special issues, the appellee may complain of any prejudicial error committed against him over his objection on such trial." In the case of LeMaster v. Fort Worth Transit Co., 138 Texas 512, 160 S. W. (2d) 224, par. 8, this Court said: "We interpret the above-quoted provision to mean that where on appeal the appellate court determines that judg-

ment non obstante veredicto was erroneously entered, such court will reverse the judgment of the trial court and enter judgment in harmony with the verdict, unless the appellee is able to present such error against himself as would have prevented an affirmance of the judgment had one been entered by the trial court in harmony with the verdict." The purpose of the above rule is to aid in the speedy dispatch of litigation by providing that matters attacking both the verdict and the judgment non obstante veredicto shall be disposed of in one appeal. Happ v. Happ (Civ. App.)', 160 S. W. (2d) ·227, par. 11. We have examined all the counter points and assignments presented by the international union and find no reversible error. It is therefore our duty to enter judgment for the plaintiff on the verdict.

The judgments of the trial court and Court of Civil Appeals are reversed, and judgment is here entered for the plaintiff for the amount of the verdict, with interest and costs, less a remittitur of $410.00 filed by plaintiff.

Opinion delivered July 17, 1946.

MR. JUSTICE BREWSTER, dissenting.

While I doubt that the facts of this case establish petitioner's liability on any theory urged by Smith, I am convinced that his cause of action is barred by limitation under Art. 5526, R. S., 1925, as a tort action.

The majority opinion holds that his demand is not barred because it is founded upon a contract in writing, under Art. 5527, id., which provides that "actions for debt where the indebtedness is evidence by or founded upon any contract in writing" shall be commenced and prosecuted within four years after the cause of action shall have accrued.

While recognizing the rule announced in Hatcher v. State, 125 Texas, 84, 81 S. W. (2d) 499, and Cowart v. Russell, 135 Texas, 562, 144 S. W. (2d) 249, that to make the four-year statute applicable "the written instrument relied upon must itself contain a contract to do the things for the nonperformance of which the action is brought," the majority opinion seeks to square this case with that rule on the theory that the written instrument need not contain an express promise to do that for

the nonperformance of which the action is brought, it being sufficient if the obligation grows out of a written instrument, "not remotely but immediately," or·if the instrument acknowledges a state of facts from which the obligation may be fairly implied. In an effort to sustain that proposition the opinion quotes from two Missouri cases and one Utah case: Reyburn v. Casey, 29 Mo., 129; M. K. & T. Ry. Co. v. Am. Surety Co., 291 Mo., 92, 236 S. W., 657; and Bracklein v. Realty Ins. Co., 95 Utah, 490, 80 Pac. (2d ) 471, and cites several Texas cases: Robinson v. Varnell, 16 Texas, 382; Elder, Dempster Co. v. St. L. & S. W. Ry. Co. of Texas, 105 Texas, 682, 154 S. W., 975; Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co., 121 Texas, 594, 51 S. W. (2d) 284; T. P. Coal & Oil Co. v. Stuard (Civ. App.) 7 S. W. (2d) 878 (er. ref.) ; Sublett v. McKinney, 19 Texas, 439; Fox v. Kroeger, 119 Texas, 511, 35 S. W. (2d) 679; Laredo Elec. Light & M. Co. v. U. S. Elec. Lighting Co. (Civ. App.) 26 S. W. 310.

I think the facts in those cases do not support the effort of the majority opinion to square the case at bar with the rule announced in Hatcher v. State and Cowart v. Russell, supra.

In Reyburn v. Casey, Casey had signed an instrument acknowledging that he had received from one Doane for Reyburn $180.00, and it was properly held that the instrument implied a promise by Casey to pay the $180.00 to Reyburn. In M. K. & T. Ry. Co. v. Am. Surety Co., the surety company had signed the bond of G. and M., contractors, who had a contract with the railway company to furnish it ties and lumber, to hold the railway company harmless from any labor or materialman claims against G. and M. The court held the surety company liable to the railway company on this bond for a judgment obtained against the railway company by a timber company for ties furnished by the latter to G. and M. to supply the railway company under the contract, because the bond "provides in express terms or by fair implication for the payment of money or property." Despite the lengthy statement by the Supreme Court of Utah in Bracklein v. Realty Ins. Co., quoted in the majority opinion, all it had to decide was whether the grantee in a deed, who therein assumed and agreed to pay an outstanding note and mortgage against the real estate conveyed, was liable upon an instrument in writing. Of course the court held that he was.

This court did say in Robinson v. Varnell, supra, that an action of debt, grounded on a contract in writing, includes all

suits brought to recover money for the breach of a contract in writing without regard to the technical distinction between debt and damages. But the writing under consideration was a contract, by the terms of which Robinson agreed to pay Varnell $150. for the hire of a negro slave during the year 1848 and to return the negro on January 1, 1849. Robison so mistreated the slave that he soon ran away and was never found, hence was never returned to Varnell; so this court said, "The present action was brought upon a contract in writing to pay a sum certain in money, technically a debt, and an unliquidated sum for the breach of the contract to deliver specific property, technically damages." Elder, Dempster Co. v. St. Louis & S. W. Ry. Co. of Texas, supra, was a suit for damages for failure to deliver 8 bales of cotton covered by a bill of lading issued by the defendant, and it was held that the bill of lading was a contract in writing as contemplated by Art. 5527, supra. Again, when this court said in Texarkana & Ft. S. Ry. Co. et al v. Houston Gas & Fuel Co., supra, that the word "debt" in the above statute "should not be given a strict, literal interpretation, but * * * should be given such a reasonable interpretation as would give it effect according to the spirit and intention of the statute," the question at bar was whether a suit to recover overcharges on freight shipments made under written bills of lading, which bound the defendant carriers to transport the freight "at the lawful rate," was a suit for debt. Of course this court held that it was. In Sublett v. McKinney, supra, the suit of an accommodation acceptor, who paid a draft, against the maker was held to be grounded upon a contract in writing. In Fox v. Kroeger, supra, the surety on a note paid it, took an assignment and sued the principal upon the note. Laredo Electric Light & M. Co. v. U. S. Elec. Lighting Co., supra was a suit for the reasonable value of good shipped and delivered on a written order, and it was held that the law will imply from the writing a promise to pay upon proof of delivery of the goods. The majority opinion's statement as to the holding in T. P. Coal & Oil Co. v. Stuard, supra, shows on its face that decision is no authority in support of the majority view. Of course the law imposes no duty on a citizen to develop an oil and gas lease, independent of contract.

The case at bar is essentially an action for wrongful disciplinary action attempted by certain committeemen of the Fort Worth local. In my opinion none of the above cases relate even remotely to such a situation. Nor does respondent cite any case which treats wrongful disciplinary action as a breach of contract.

In Brennan v. United Hatters of North America, 73 N. J. L. 729, 65 Atlantic, 165, 9 L. R. A. N. S. 254, 118 Am. St. Rep. 727, 9 Am. Cas. 698, the facts are in exact parallel with the facts in this case except that the suit was against the local rather than the parent union. Brennan was a member of a local union of the United Hatters of North America and was employed by a named firm in the making of hats. As the holder of a membership card he was authorized under the constitution and by-laws of United Hatters to engage in that work. The vigilance committee of the local union, under pretense that Brennan had violated the laws of the local, found him guilty and fined him $500.00. This action was taken without notice to Brennan and without written charges, as the union rules required. Upon Brennan's refusal to pay the fine, his membership card was withdrawn and the firm for which he was working was compelled therefore to discontinue his employment. Shortly thereafter the local union exonerated Brennan and returned his card, whereupon he went back to his original employment. His suit was to recover what he lost by reason of this inference with his employment. Justice Pitney, later Associate Justice of the Supreme Court of the United States, opens his opinion with the statement, "This is an action of tort." Observing that the common law has long recognized "as a part of the boasted liberty of every citizen the right of every man to freely engage in such lawful business or occupation as he himself may choose, free from hindrance or obstruction by his fellow men saving such as may result from the exercise of equal or superior rights on their part," he holds that "upon both reason and authority" the defendants were liable to Brennan for their unwarranted interference with his common-law right to dispose of his labor as he pleased in pursuing his trade as a hatter; and that Brennan "having sustained damage as a result thereof in losing his place of employment, the present action is maintainable." See, also, Sweetman v. Barrows, 263 Mass. 349, 161 N. E., 272, 62 A. L. R., 311, 315; Grand International B. of L. Engrs. v. Green, 210 Ala. 496, 98 So., 569; Local Union No. 65 of Amalgamated S. M. W. J. A. v. Nalty (CCA) 7 Fed., (2d) 100.

A person's right to use his own labor in any lawful employment is described by an eminent authority as one of the first and highest of civil rights. "It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever. * * * It is also his right to have business relations with any one with whom he can make contracts, and if he is wrongfully deprived of this right by others, he is

entitled to redress." Cooley's Law of Torts (3rd Ed.) Vol. 2, pp. 584, 587. Sweetman v. Barrows, supra, describes this right of one to dispose of his labor to the best advantage as a "natural right."

So, whether the right be called a common-law right, a civil right or a natural right, it is one which he enjoys because the law gives it to him; it is in no sence dependent upon contract. It follows therefore that any violation of that right is a breach of a legal duty rather than a breach of a contract.

Of course, within whatever limits the law sets, one may fix conditions and limitations on his right to dispose of his labor as he wills. If he elects, he may contract with others that as a member with them of a labor union he will work only under the terms and conditions prescribed in the constitution and by-laws of the union and that if, in the manner therein prescribed, he is adjudged guilty of violating that constitution and by-laws he will thereby circumscribe or forfeit altogether his right to dispose of his own labor as he chooses. Screwmen's Benevolent Association v. Benson, 76 Texas, 552, 13 S. W., 379. It follows that so long as the union acts under that contract in limiting the right of a member to work, it is guilty of no breach of legal duty, because he has contracted the right away; but if it steps outside the bounds of the constitution and by-laws to interfere with his common-law, natural or civil right to work it is guilty of a breach of legal duty rather than a breach of contract, because he has not contracted that right away.

I think the point is well illustrated in S. L. & S. W. Ry. Co. of Texas v. Thompson, 102 Texas, 89, 113 S. W., 144. In overruling the contention there that Thompson was not entitled to recover damages for wrongful expulsion from the Grand International Brotherhood of Locomotive Engineers because he had not prosecuted an appeal to higher authorities within the organization as its rules required before resorting to the courts, this court held that the suit involved both his personal and his property rights and that his right to turn to the courts for redress "exists in favor of all citizens, and could not be adbridged by any association except by the consent of the member."

Again, in Grand International B. of L. Engineers v. Green, supra, the Supreme Court of Alabama, in passing on the same contention, recognizes that the constitution and by-laws of a union are in the nature of a contract binding both on it and its members; that the expulsion of a member, if for cause within

the jurisdiction of the tribunal of the union by which it is pronounced, after notice and opportunity to be heard, is conclusive on the courts; but it holds that in that process the unions "must not violate the laws of the land or any inalienable right of their members." Then it observes: "Under no law of the brotherhood or of the land was this a just or sufficient ground for his expulsion, and upon the proof plaintiff was correctly allowed to have verdict and judgment." The opinion clearly recognizes that Green's cause of action was in tort.

In Sullivan v. Barrows, 303 Mass. 197, 21 N. E., (2d) 275, it is said that the measure of damages for such attempted expulsion and interference with a member's employment is not based upon a breach of contract but upon the direct and proximate results of the wrongful acts of the defendants.

In this case everything the trial committee did was void because they were acting wholly without the constitution and by-laws of the union, hence it offered no limitation whatever on Smith's right to work; so the majority opinion is patently wrong in stating that "all the rights for which he seeks redress arose by virtue of the agreement of the parties." That agreement, as carried in the constitution and by-laws, can be considered only as a matter of inducement as to the wrong done Smith; that is, its only relevancy is to show that it induced or created the situation that occasioned his attempted expulsion from the order and to show that under none of its terms had he forfeited his legal right to work. See Galveston H. & S. A. Ry. Co. v. Roemer, 1 Texas Civ. App. 191, 20 S. W., 843. "When an action seeks the recovery of damages for injuries to person or to property, it will, for the purpose of the statute of limitations, be considered as one in tort, and allegations as to a contract will be considered merely as a matter of inducement." 28 Tex. Jur., p. 127, sec. 47. This is so because a wrong outside the letter of the contract furnishes the gravamen of the suit. Pecos & N. T. Ry. Co. v. Amarillo St. Ry. Co. (Civ. App.) 171 S. W. 1103.

Respondent apparently regarded his cause of action as one in tort; otherwise there appears no reason to plead an alleged agreement with one Thompson, president of the local union, within two years of Smith's attempted expulsion, that if Smith would not file his lawsuit the union would compensate him for his loss of wages. The jury found that no such agreement was made, but if it had found the contrary there would be no question of limitation in this case. Moreover, Smith sued for $10,000

exemplary damages, which are not recoverable for simple breach of contract however malicious the breach. A. L. Carter Lbr. Co. v. Saide, 140 Texas, 523, 168 S. W. (2d) 629.

I think the trial court correctly disposed of this case because respondent's cause of action is in tort and barred by limitation under Art. 5526, supra. Therefore, I respectfully dissent from the majority opinion.

Justice Smedley, Hickman and Slatton join in this dissent.

Opinion delivered July 17, 1946.

### MOTION FOR REHEARING.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

Upon motion for rehearing it is argued with much force that plaintiff's action for the damages suffered by him is in tort, and not on contract. In view of this argument, we have re-examined the subject, but have reached the same conclusion as that announced in our original decision.

■ Undoubtedly, one has a right to dispose of his labor in any manner satisfactory to himself, so long as he does not violate the law or his contractual relation with others, and for any unlawful interference with that right he has a common law action in tort for the damages suffered by him. Brennan v. United Hatters, etc., 73 N. J. L. 729, 65 Atl. 165, 9 L. R. A. (N. S.) 254. And if plaintiff had brought this action solely for damages for interfering with his common law right to labor, we would have no difficulty in reaching the conclusion that the action was in tort. But that is not the nature of plaintiff's suit.

Plaintiff alleged in part as follows: "Plaintiff did execute a written contract of application for membership in the International Printing Pressmen and Assistant's Union of North America through their subordinate union known as Fort Worth Printing Pressmen and Assistants' Union, No. 47, said subordinate union being the servant, agent and employee of defendant union herein. * * * That in return for the obligation and promises that were contained in the application and obligation executed by plaintiff herein to the defendant union, the defendant did in return for such consideration, accept plaintiff into membership and did deliver a certificate of membership, granting to plaintiff, the friendship and good offices of all unions under

the jurisdiction of the International Printing Pressmen & Assistants Union of North America, and particularly the benefits under the constitution, laws and scale of wages of the defendant union." After alleging that the union had unlawfully expelled him, he further alleged: "That because of the acts of the defendant, their servants, agents, and employees and the subordinate union, plaintiff lost his standing as a union man, and the benefits belonging to him and received by him as a union man and a member of Local No. 47, and the benefits as provided for the members by the defendant union, and plaintiff lost all benefits to which he was entitled under the constitution and by-laws of the defendant corporation, including insurance, membership of the said Local No. 47: Plaintiff would show that his suspension and fine was made with improper motives and made upon untenable grounds, and that such suspension has caused this plaintiff great mental suffering and humiliation by reason of the motives by the defendant, their servants, agents, and employees and subordinate union. * * * and that by reason of the unlawful, illegal acts of the defendant, their agents, servants, and employees and subordinate union and by reason of the breach of contract hereinabove referred to by the defendant through their agents, servants, and employees, plaintiff has suffered actual damages in the sum of $8,050.57."

■ From the above it is clear, we think, that plaintiff's action is not one merely for damages for unlawful interference with his common law right to labor. He does not seek to recover damages for breach of any right that accrued to him by operation of law. He asserts a contract, evidenced by the constitution and by-laws, which entitled him to membership in the union with all of the benefits incident thereto, and charges that his unlawful expulsion from the union constituted a breach of that contract. He seeks to recover the damages which he suffered as a result of his expulsion from the union in violation of the contract. In the case of St. Louis, Southwestern Ry. Co. v. Thompson, 102 Texas 89, 113 S. W. 144, 19 Am. Cas. 1250, this Court held that a member of the union could recover damages suffered by him as the result of the wrongful expulsion therefrom. In our opinion the action was upon contract and is regulated by the four years' statute of limitation.

The motion for rehearing is overruled.

Associate Justices Brewster, Smedley, Hickman and Slatton dissenting. (See opinion, page 414.)

Opinion delivered January 8, 1947.